## No. 13,391.

JOHNSON OIL AND REFINING COMPANY *v.* ELDER.

(42 P. [2d] 610)

Decided March 11, 1935.

Messrs. CUCKOW & COSAND, for plaintiff in error.

Mr. A. C. JOHNSON, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THE parties appear here as in the trial court and will be mentioned as plaintiff and defendant.

Plaintiff brought suit on open account to recover $616.12, the purchase price of two carloads of gasoline,

sold and delivered to defendant at Las Animas, Colorado, under a contract. The defendant filed answer and counterclaim in the sum of $1,420.82 for overcharge he had voluntarily paid. The jury verdict was for defendant in the sum of $804.70, or the difference between plaintiff's claim and the counterclaim. Error is assigned to the judgment entered on this verdict after denial of motion for new trial. There is no dispute as to the amounts involved. Defendant admitted the account, but claimed an overcharge, not only on the two cars of gasoline upon which suit was brought, but also on a number of other cars previously purchased and paid for. Parts of the contract, construction of which will determine this controversy, are as follows:

"2. The territory covered by this agreement shall be as follows:

"All that territory lying within a ten-mile radius of the City of Las Animas, in the State of Colorado.

\* \* \*

"4. Johnson Gasolene, Johnson High Test Gasolene, Johnson Ethyl Gasolene, Johnson Kerosene, and Johnson Furnace Oil sold hereunder shall be invoiced to Buyer at the Spot Market Price, F. O. B. Cleveland, Oklahoma, (Group 3); said Spot Market Price to be determined by taking the average price shown in Platt's Oil Gram Chicago Resale Market of Date of shipment.

"Commodity Equivalent description in Platt's Oil Gram for price basis.

\* \* \*

"Provided, however, that on gasolene and Kerosene, except Johnson Hi-Test Gasolene, said Spot Market Price per gallon, F. O. B. Cleveland, Oklahoma (Group 3), plus the cost of freight to destination, plus four cents, shall in no case exceed the officially posted tank wagon price per gallon of the Continental Oil Co. for the respective commodities, at point of destination on date of shipment.

"It is hereby expressly agreed by the Buyer and the Seller that the 'officially posted tank wagon price' per

gallon at point of destination of shipment herein mentioned, shall always have and maintain its normal relation to the General officially posted tank wagon price posted by the Standard Oil Company of Indiana throughout its marketing territory; and that the prices of goods covered by this contract shall in no case be affected by any special or cut tank wagon price applying only to points of destination, and not generally throughout the marketing territory above specified.''

The proper price to be charged under this contract is the only question involved. Plaintiff contends that it is an amount four cents below the general officially posted tank wagon price of the Continental Oil Company at Las Animas on the day of the sale. Defendant claims that he should have been charged four cents below the actual tank wagon price at the time and place of sale. For all the cars of gasoline sold to defendant, he was charged the general posted tank wagon price, for which he paid, prior to the purchase of the two cars here involved. A ''gas war'' arose in Las Animas, and defendant wrote plaintiff contending that he should be charged the cut tank wagon price prevailing, and that he had been overcharged on former cars. Plaintiff replied denying defendant's contention, and calling attention to the wording of the contract; thereafter defendant voluntarily paid for the cars of gasoline already received, and ordered and paid for others at the agreed contract price. The court permitted defendant to testify as to what he contended was the right price, but denied plaintiff a like privilege. Plaintiff offered to prove the officially posted tank wagon price as of the dates the gasoline was received, and that a price war existed. The offer was denied by the court, to the prejudice of plaintiff.

█ It is so evident from the plain provision of the contract, that plaintiff's contention is correct and that the price to be charged was to be governed by the officially posted tank wagon price prevailing at the date and destination of shipment—in no case to be affected by any

special or cut tank wagon price, such as formed the basis for defendant's counterclaim—that we do not consider a discussion necessary. We think the court should have received all the evidence and of its own motion directed a verdict in favor of plaintiff. If for no other reason, the case should be reversed on account of the court's refusal to admit plaintiff's evidence concerning some of the correspondence between the parties, offered to show that defendant voluntarily paid for much of the gasoline shipped, with full knowledge of the facts, and after being refused a different price, as shown by Exhibit D quoted below. Failure of plaintiff to act, and to refuse to pay what he now contends was an overcharge, after being informed that his contention was contrary to the terms of the contract, established each payment as voluntary.

"Ex. D."

May 5, 1931.

"Mr. J. T. Elder,
    Las Animas, Colorado.

"Dear Sir:

"Your letter of April 22nd in which you mentioned the present low tank wagon and service station prices prevailing at Las Animas was passed on to our Chicago office for their attention.

"We are today in receipt of a letter from them stating that much as they would like to assist you in your present difficulty, it would be out of the question for us to do so at this time for the reason that present refinery prices are already below the cost of manufacture. However, they do state that until such time as your tank wagon and service station prices in Las Animas adjust themselves more to a normal basis, they will be willing as a temporary measure of relief, to invoice Johnson Gasolene to you on basis of the low price on date of shipment as shown in Platt's Daily Oilgram covering the commodity shipped instead of the average price.

"By referring to your franchise you will note that the method of determining price is taking the average. By

318

granting you this concession it will afford you a small measure of relief. However, please understand that this concession is strictly voluntary on the part of this Company and will have no bearing whatsoever on that portion of our contract pertaining to price, and we are reserving the right to withdraw this special temporary arrangement at our option.

"We regret very much that marketing conditions out in your territory right now are so unprofitable but your territory is not the only one suffering right now and we are looking for, and hoping for, an early change for the better. Until such times we shall be glad to co-operate with you to the extent mentioned above.

Yours very truly,

J. Haggenjos/AF          Manager, Omaha Office."

■ "Where a person has acted with full knowledge of all the material facts, he cannot recover money which he had voluntarily paid under a contract." 48 C. J., p. 738, §285.

■ "It is a familiar and well-settled principle of law * * * that an action will not lie to recover back money paid voluntarily, with a full knowledge of the facts and circumstances." *Lewis v. Hughes,* 12 Colo. 208, 20 Pac. 621.

■ Plaintiff plead mutual mistake in not striking the words "Standard Oil Company of Indiana" from the form contract, and substituting the words "Continental Oil Company," as was done in an earlier paragraph of the contract, and asked reformation accordingly. Offer to prove that the Standard Oil Company was not doing business in the territory involved, was refused by the court on objection that it would vary the term of a written contract. This refusal was error which is apparent from the face of the contract. The error would not be mentioned, in view of the fact that we have determined the case on other grounds, except for the inconsistency which appears in the contract quoted in this opinion.

Judgment reversed with directions to enter judgment for plaintiff as prayed.

Mr. Chief Justice Butler and Mr. Justice Bouck concur.