No. 22080.

GEORGE J. FRANCIS, FRAN D. FRANCIS AND VERNON D. VOHOSKA *v.* THE CITY AND COUNTY OF DENVER, A MUNICIPAL CORPORATION; THOMAS CURRIGAN AS THE MAYOR OF THE CITY AND COUNTY OF DENVER; THE BOARD OF ADJUSTMENT ZONING FOR THE CITY AND COUNTY OF DENVER; THOMAS W. BEAN, HARRY W. BUNDY, LELAND S. HUTTNER, MICHAEL POMPONIO, AND JOHN ZIMMERMAN, AS MEMBERS OF THE BOARD OF ADJUSTMENT OR PURPORTING TO ACT AS MEMBERS OF THE BOARD OF ADJUSTMENT.

(418 P.2d 45)

Decided September 6, 1966. Rehearing denied October 3, 1966.

GEORGE J. FRANCIS, pro se and for plaintiffs in error.

MAX P. ZALL, City Attorney, EARL T. THRASHER, Assistant, ROBERT M. KELLY, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will refer to the plaintiffs in error as the plaintiffs; to the City and County of Denver as the city; to Thomas Currigan as the Mayor; and to all other defendants as the Board of Adjustment.

In the trial court the plaintiffs sought a judgment invalidating certain orders of the Board of Adjustment concerning property which plaintiffs now own, and which allegedly unlawfully prevent them from the full use of their property in accordance with those uses which are authorized by the zoning ordinance of the city applicable to the area in which the real property is located.

Plaintiffs are the owners of a tract of unimproved land located on the southwest corner of 8th avenue and Washington street in Denver, commonly known as the Boettcher property. They acquired title to this tract of land after it had been included as part of a "Zone Lot" by the Board of Adjustment-Zoning for the purpose of

assembling a square-foot area sufficient to authorize the construction of a multiple story apartment house, on the southeast corner of the intersection upon which the Lido apartments now stand. Immediately prior to April 1959 both of the properties were jointly owned by Green Acres Investment Co., Great Western Building Co., Parkview Building, Inc., and Green Meadows Land Co. The two properties are separated by Washington street.

The owners of the total land area made application to the Zone Administrator for the purpose of obtaining permission to include both parcels of land as a "Zone Lot," and also sought a permit to erect a multiple story apartment house on the southeast corner of 8th avenue and Washington street, across the street from the Boettcher property. The building which applicants sought to erect on the southeast corner of 8th and Washington contained a greater area of floor space than was permitted by zoning regulations applicable to that location. However, by including the Boettcher land across the street as part of the "Zone Lot" upon which the Lido was to be built there would be sufficient ground area to authorize the proposed building. The application was made pursuant to Section 616 of the municipal code relating to "Special Zone Lot Plan for Planned Building Groups." By adding the Boettcher property the applicants gained an additional 40,000 square feet of gross floor area in connection with the proposed apartment house building to be erected on the southeast corner.

The Zoning Administrator denied the application of the owners to include the southwest corner as part of the "Zone Lot." Upon appeal to the Board of Adjustment, that body reversed the decision of the Zone Administrator and held that both parcels of land could be considered one "Zone Lot." By that order the Board of Adjustment thus authorized the issuance of a permit to erect the Lido Apartments.

The "Planned Building Group" authorized by act of the Board of Adjustment contemplated that the Boett-

cher mansion would remain standing, its landscaping would be restored, no parking would be permitted, guests of the tenants of the new apartment house would make use of the mansion as sleeping quarters, and that no other use would be made of the Boettcher property. The Board of Adjustment found that all of the property was one "Zone Lot," and notwithstanding that it was divided by Washington street, it was a single parcel of contiguous land. Before the Lido was built the title to the Boettcher property was conveyed to new owners. It is clear that no use was ever made of the Boettcher property by the owners of the Lido Apartments or by any tenants of the Lido. In February 1960 the Board of Adjustment, upon application of the new owners, entered an order permitting the temporary use of the mansion as a single dwelling unit upon a showing that vandals were destroying the property, and that occupancy by someone would be desirable; however, it never was occupied. The windows were boarded up, and ultimately the entire structure was razed on order of the city. The corner has at all times since remained as vacant, unused ground. In the early part of 1964 a deed of trust on the Boettcher corner was foreclosed and title thereto passed to three Savings and Loan Associations by deed from the Public Trustee.

In November 1964 the plaintiffs acquired title to the Boettcher corner, and on December 8, 1964, they applied for a change in the "Zone Lot" order of 1959. On February 2, 1965, this application was denied and the Board of Adjustment reaffirmed the restrictions upon the uses to which the Boettcher corner could be put as part of the "Zone Lot Planned Building Group," allocated to the Lido apartments.

On March 1, 1965, the complaint in the instant action was filed by the Plaintiffs. Essentially, it is alleged in the complaint that the restrictions placed on the Boettcher corner were void for various reasons including the claim that the restrictions imposed were beyond the

jurisdictional powers of the Board; that plaintiffs are deprived of all use of the land and are unable to subject it to any use authorized under the R-3 status of the area in which it is located; and that the Board which imposed the restrictions was illegally appointed. It was urged in the trial court that, even if the restrictions had been lawfully imposed in 1959, the refusal to grant plaintiffs' application for relief therefrom in 1965 because of changed circumstances was error and operated to deny any beneficial use of the property, and was therefore confiscatory and amounted to a denial of due process and equal protection of the law.

We direct attention to paragraph 13 of the first claim contained in plaintiffs' complaint. It reads as follows:

"Subsequent to the decision in Case #65-59, the zone ordinances of the Defendant City were amended with respect to bulk plane provisions and allowable gross floor area so that the Lido at the time of the plaintiffs application and appeal, hereafter referred to, was not in violation of bulk plane requirements of the ordinance. The gross floor area violation was substantially reduced."
The answer filed by the city and all other defendants admits the allegation of the above-quoted paragraph.

Under this state of the record the position of the city is that, notwithstanding the admitted fact that the southwest corner (Boettcher tract of land) has never at any time been used for any beneficial purpose by the Lido apartments; is not now so used; and will not at any future time be used as part of the Zone Lot assigned to the Lido; it must for all time to come remain as vacant property and no use can, as a practical matter, be made of it.

The city further contends, in effect, that this result must follow notwithstanding that, due to amendments in the applicable ordinance, the Lido apartments building no longer needs the ground on the southwest corner as part of the Zone Lot allocated to it in order to be in full conformity with "bulk plane" requirements which

were in full force and effect at the time the plaintiffs acquired title to the property and at the time they made application to the Board of Adjustment for relief from the questionable restrictions which had theretofore been placed upon the use to which the land could be put. The amendments to the ordinance further reduced the "gross floor area" requirements chargeable to the Lido by at least 17,000 square feet, and its "gross floor area" violation (if the Boettcher land is excluded from consideration) was also reduced by that amount.

The briefs of the parties are exhaustive and deal with the following questions: whether plaintiffs can be heard in this action which was commenced more than 30 days after the 1959 order of the Board of Adjustment; whether the original Zone Lot order was void or simply erroneous; whether a single Zone Lot under the applicable ordinances can be created by including therein property which is divided by a public street; and whether the Board of Adjustment was a de jure body functioning under a valid appointment or a de facto body operating under an illegal "color of authority."

The "Planned Building Group" contemplated at the outset of this controversy never existed at any time except on paper. No steps were ever taken by the city to see to it that the authorized "Zone Lot" ever existed in fact. The Lido Apartments did nothing whatever to justify inclusion of the Boettcher corner as part of its operations and the city by affirmative act ordered the destruction of the "Planned Building Group" by seeing to it that the Boettcher mansion was razed.

 Under all the foregoing facts and circumstances it is sufficient to say that the Board of Adjustment erred when on February 2, 1965, it denied the application of the plaintiffs for relief. The judgment of the trial court affirming the action of the Board of Adjustment denied to the plaintiffs the constitutionally protected right to make a beneficial use of their land. Under the particular facts of this case the restrictions against which plain-

tiffs complain are unconstitutional, confiscatory, and void.

By this opinion we do not determine the question as to whether, under applicable charter and ordinance provisions, a "Zone Lot" can consist of land which is divided into two parts by a public street. On that question there is a difference of opinion and it is unnecessary to decide that issue in disposing of this case.

The judgment is reversed and the cause remanded with directions to grant the relief prayed for by the plaintiffs.

MR. JUSTICE MCWILLIAMS dissents.

MR. JUSTICE MCWILLIAMS dissenting:

I must dissent, as I remain completely unmoved by plaintiffs' plea that the present restrictions on the use of their property situate on the southwest corner of Eighth Avenue and Washington Street are, as characterized by the majority opinion, "unconstitutional, confiscatory and void." It is to be noted that the majority opinion in nowise points out just which provisions of what constitution negate the present restrictions on this particular property. Rather, these restrictions in my opinion are in a real sense of the plaintiffs own making, and accordingly I view this entire matter as merely a bootstrap operation of a rather obvious type, and one that should certainly not find sanction in the law.

Furthermore, I regard the majority opinion as striking at the very heart of the Zone Lot concept. In this regard an ordinance of the City and County of Denver provides as follows:

 "*Zone Lot for Structures.* A separate ground area, herein called the Zone Lot, shall be designated, provided and *continuously maintained* for each structure containing a Use by Right. Each Zone Lot shall have at least one front line and shall be occupied only by the structure containing a Use by Right and a subordinate struc-

ture or structures containing only Assessory Uses. * * * *" (Emphasis supplied.)

Without going into unnecessary detail, the size of a building which may lawfully be constructed on a given Zone Lot is related to, and depends upon, the total surface area of the particular Zone Lot. In other words, the larger the Zone Lot the larger the apartment house, for example, which can be built thereon.

It was in this setting that in 1959 the owners of the eight lots on the southeast corner of Eighth Avenue and Washington Street, who at that time also owned the five lots on the southwest corner of the same intersection, *asked* the Board of Adjustment to group these thirteen lots into one Zone Lot. The Board acceded to their request and because the five lots on the southwest corner were included in the Zone Lot, a much bigger apartment house was constructed than could have otherwise been possible.

In my view of the matter, it is of the utmost importance to note that this is not an instance where the Board in any manner "took" property by involuntarily imposing restrictions on the property situated on the southwest corner of this intersection. Rather, this is an instance where the owners of these lots of their own volition sought to have their lots included in the aforementioned Zone Lot knowing full well that this ground area would have to be thereafter "continuously maintained" for the structure which was to be built thereon. They got, then, what they asked for, but now that the "bigger" Lido has been constructed, they seek to get out of the Zone Lot in question. And there is no suggestion that the plaintiffs in this action are in any different or better position than their predecessors in title, namely, those persons who owned the land in 1959. Plaintiff purchased this land with both the actual and constructive knowledge that these lots were a part of the Zone Lot upon which the Lido had been constructed, and knowing further that the applicable ordinance pro-

vided that a Zone Lot should thereafter be "continuously maintained" for each structure thereon. In plainer language, plaintiffs knew they were simply buying a law suit, in the sense that they knew the five lots in question were a part of the Zone Lot on which the Lido had been constructed and that these five lots would be of little value *unless* they could somehow get these five lots removed from this particular Zone Lot.

This, then, is but an instance where the owners of the lots on the southwest corner of Eighth Avenue and Washington Street are being permitted by us to defy the ancient adage that one may not have his cake and eat it too. By that I mean this: in 1959 the owners of these particular lots asked to be included in the Zone Lot upon which the Lido was to be built; this request was granted and a "bigger" Lido was built thereon than could otherwise have been constructed; now that the Lido is built, new owners of these same lots blandly ask to be taken out of this particular Zone Lot; and by the majority opinion this request is now to be granted. This I cannot accede to, and therefore I must dissent.

In the majority opinion is the strong suggestion that because the property in question is run down and no doubt is overrun with weeds and tin cans, it should therefore be released from the Zone Lot upon which the Lido is now standing. There is no citation of authority for the proposition that because one allows his property to get into a run down condition, he thereby frees it from valid zoning restrictions. This, of course, would really be a bootstrap operation.

Finally, I recognize that the plaintiffs do urge many matters which are indeed debatable, but such do not form the basis for the majority opinion. What I do dissent from is the bald holding that the restrictions on the plaintiffs' property are simply unconstitutional, confiscatory and void. Just how and why such are unconstitutional, confiscatory and void has not been spelled out to my satisfaction, at least. How the owners of the

subject property can now successfully complain about that which their predecessors in title voluntarily sought, and got, defeats me.