## UNITED BANK OF AURORA, Plaintiff–Appellee,

v.

## David MEAUX, Defendant–Appellant.

### No. 85CA0524.

Colorado Court of Appeals, Div. III.

April 7, 1988.

Rehearing Denied April 28, 1988.

Certiorari Denied Sept. 6, 1988.

Elrod, Katz, Preeo & Look, P.C., Michael P. Serruto, Robert R. Marshall, Denver, for plaintiff-appellee.

Stuart G. Barr, P.C., Stuart G. Barr, Denver, for defendant-appellant.

STERNBERG, Judge.

The plaintiff, United Bank of Aurora (the bank), filed suit to enforce an alleged guaranty of a loan by the defendant, David Meaux. Meaux counterclaimed, seeking cancellation of his obligation under a replacement guaranty executed in 1983, four years after the loan had been made, and seeking refund of monies he paid, allegedly by mistake, to the bank. Following a trial to the court, judgment entered against the bank on its complaint to enforce the guaranty, and judgment entered against Meaux on his counterclaim. Thus, the court held

that Meaux had no liability to make additional payments, but the bank did not have to refund the payments he had made. Meaux appealed, and the bank cross-appealed, but the cross-appeal was dismissed by this court because its motion for new trial was late. We reverse the judgment on the counterclaim.

Meaux was one of the principal owners and managers of a business called Burt's World of Nutrition (Burt's). One of his employees in another business, Paul Hudnall, desired to purchase a franchise from Burt's. Hudnall went to the bank to obtain the financing for the $30,000 purchase price. He and his wife submitted a financial statement which did not justify granting a loan without a guarantor. Nevertheless, the loan was made.

Of the proceeds, $20,000 was paid by Hudnall to Meaux as down payment on the purchase of the franchise. Hudnall defaulted in early 1980. During a telephone conversation, the loan officer told Meaux that he had guaranteed the loan. The payment coupons for the loan were sent to Meaux, and payments were made by a corporation controlled by him. That corporation assigned its claim for repayment to Meaux.

Based on the testimony of the parties, and because some documents so indicating were found in the bank's file, the court found that the bank had intended to require a guaranty before granting the loan, but no guaranty agreement was ever found. The trial court found that the bank had not carried its burden of proving that a guaranty was ever signed, much less that it was ever signed by Meaux individually. The court also found that Meaux intended to guarantee the Hudnall loan, either individually or through one of his corporations, and that he felt a moral, if not legal, obligation to repay the loan. The court held the written guaranty Meaux signed in 1983 to be void for lack of consideration.

Despite these findings, the court concluded that it did not follow that Meaux was entitled to return of the payments he had made. Because of the circumstances surrounding the granting of the loan and the relationship between Meaux and the bank, and the defendant's feeling of responsibility about the loan, the court concluded that the payments were voluntary and that, therefore, Meaux was not entitled to reimbursement.

On appeal, Meaux asserts that the court erred in holding the payments to be voluntary and that, because his payments were made by mistake, they should be returned to him. The bank, on the other hand, contends that there was ample evidence that Meaux made the payments voluntarily with knowledge of the facts and that, in any event, a mistaken surety is not entitled to restitution if he is morally obligated to make the payment, or if the payee materially changes its position in reliance upon the payments. We agree with Meaux.

In support of the judgment, the bank advances certain exceptions to the doctrine that money paid under a mistake of fact should be returned. First, relying on *Johnson Oil & Refining Co. v. Elder*, 96 Colo. 314, 42 P.2d 610 (1935), the bank asserts that restitution is not proper as to payments made voluntarily. That case is distinguishable, however, because there the payment had been made voluntarily *with a full knowledge of the circumstances.* Such is not the case here; Meaux did not know the bank did not have a guaranty in its file.

Secondly, the bank cites Restatement of Restitution, § 14(1) (1938) which provides:

"A creditor of another or one having a lien on another's property who has received from a third person any benefit in discharge of the debt or lien, is under no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests or duties, *if the transferee made no misrepresentation* and did not have notice of the transferor's mistake." (emphasis added)

The emphasized statement in that section makes it clear that the rule is specifically predicated on there being no misrepresentation by one in the position occupied by the bank.

Meaux testified that he received a bill from the bank relating to the Hudnall note and called the loan officer involved who told him that the Hudnalls had defaulted and that he [Meaux] guaranteed the loan. Meaux expressed surprise and asked if the bank was sure, to which the loan officer responded that there was a guaranty. The loan officer testified that: "I phoned him, asked him to make good on his guaranty...."

Based on this testimony, we must conclude that there was at least a negligent misrepresentation of the existence of a guaranty by Meaux in the bank's file which led to his payments. Thus, we cannot look at Meaux simply as a volunteer, or hold that the bank received the money in good faith, which is a prerequisite to denial of restitution. *See* III G. Palmer, *The Law of Restitution* § 16.6 at 490 (1978). For this reason, we conclude that the court erred in denying restitution to Meaux.

The judgment is reversed and the cause is remanded for entry of judgment granting Meaux restitution for the monies he paid by mistake.

VAN CISE and JONES, JJ., concur.