## BROOKSIDE MEMORIALS, INC. v. BARRE CITY

[702 A.2d 47]

No. 96-429

June 13, 1997. Plaintiff Brookside Memorials, Inc., a granite manufacturer seeking a refund for sewer bill overpayments it made to defendant Barre City over a six-year period, appeals the superior court's order granting the City summary judgment. We hold that under the facts and circumstances of this case, plaintiff is entitled to the requested refund; accordingly, we reverse the court's order and grant summary judgment to plaintiff.

Plaintiff is a Barre City business engaged in the manufacture and distribution of granite memorials and other granite products. The building in which plaintiff is located was operated as a granite shed for approximately seventy-five years, when, in 1977, it was sold to an insulation company. Plaintiff took possession of the site in 1982, and since then has operated it as a granite manufacturing business.

Barre City bills residents and businesses quarterly for water use and sewage disposal. Water bills are based on metered use. For most residents and businesses, sewer bills are calculated as a percentage of the metered water use; however, for those manufacturing businesses that do not return all of the water that they use back into the sewer system, sewer bills are based on the number of workers employed at the site rather than on the amount of water used. Granite manufacturers such as plaintiff are charged a flat rate based on the number of employees because the large volume of water that they use in the manufacturing process is discharged into sludge pits or lagoons rather than the city sewer system.

Nevertheless, from 1982 to 1994, the City billed plaintiff for sewer disposal at the metered rate, which often exceeded $3500 per year, rather than the flat rate, which would have been only about $100 per year. Thus, during the twelve-year period, plaintiff paid over $40,000 more than it was obligated to pay for sewage disposal.

In 1994, plaintiff's owners learned that their business should have been billed at the flat rate. They brought the matter to the attention of the City, which agreed to apply the lower rate in the future. The City also offered to give plaintiff a refund for overpayments made during the most recent year, but refused plaintiff's demand that the City refund all overpayments made during the previous six years, the general limitations period for civil actions. See 12 V.S.A. § 511. Plaintiff then sued the City under theories of breach of contract and unjust enrichment.

The superior court granted the City summary judgment, ruling that plaintiff bore the responsibility but failed to ascertain whether its sewer bills were reflective of and consistent with the use of its premises. According to the court, regardless of whether the City knew that plaintiff was operating as a granite shed, plaintiff was not entitled to a refund because it had paid the sewer bills voluntarily without protest and could have discovered the problem through reasonable diligence, including examining the bills.

On appeal, plaintiff contends that the law and facts of the case require the City to refund the overpayments. The City concedes that plaintiff was entitled to pay

the flat rate, and does not contend that the metered rate was reasonable or equitable as applied to plaintiff. See *Handy v. City of Rutland*, 156 Vt. 397, 404, 598 A.2d 114, 118 (1990) ("Vermont law . . . requires that [sewer] rates be fair, equitable and reasonable."). Rather, the City argues that plaintiff was in the best position to discover that it was being billed under the wrong rate, and thus bore the responsibility for informing the City of the mistake.

Under a quasi-contract theory of unjust enrichment, the law implies a promise to pay when a party receives a benefit and retention of the benefit would be inequitable. *In re Estate of Elliott*, 149 Vt. 248, 252, 542 A.2d 282, 285 (1988). This theory may be applied in an action seeking a refund from a municipality: "If money is paid to a municipality which, in justice and in good conscience it ought to return, it is generally liable for repayment on an implied contract." 17 E. McQuillin, The Law of Municipal Corporations § 49.62, at 425 (3d ed. 1993). Generally, *voluntary* payments made to a municipality, including payments made to obtain water or sewer services, are not recoverable. *Id.* This voluntary payment rule is based on public policy concerns that governmental bodies must be able to rely on the presumptive validity of their laws in planning their budgets. Nevertheless, "in the absence of fraud, imposition, undue influence and the like, money paid to a municipality with a full knowledge of the facts, but under a mistake of the law, cannot be recovered." *Id.*

The City argues that the court properly applied the voluntary payment rule in this instance because plaintiff's failure to discover the existence of the flat rate to which it was entitled was a mistake of law that precludes recovery of the overpayments. According to the City, plaintiff should have learned of the correct rate by discussing the matter with its peers in the granite industry or by inquiring at the Water and Sewer Department. We conclude that the voluntary payment rule does not apply under the circumstances of this particular case because plaintiff made the payments without a full knowledge of the facts, and the City, not plaintiff, was in a better position to discover and correct the error. See *Getto v. City of Chicago*, 426 N.E.2d 844, 849-50 (Ill. 1981) (voluntary payment rule does not apply unless it is shown that plaintiff had knowledge of facts upon which to frame protest).

The overpayments in this case arose out of the parties' mutual mistake as to the correct sewer rate to apply to plaintiff. The City's mistake was one of fact — failing to recognize that plaintiff was a granite manufacturing business entitled to the flat rate. Although plaintiff's "mistake" — failing to become aware of the existence of the City's flat rate for businesses such as itself — could be characterized as a mistake of law, it was not a typical mistake of law involving a failure to appreciate the effect or consequences of a recognized law. Cf. *New Jersey Hospital Ass'n v. Fishman*, 661 A.2d 842, 849 (N.J. Super. Ct. App. Div. 1995) (payment of taxes under commissioner's misinterpretation of statute was mistake of law); *G. Heileman Brewing Co. v. City of La Crosse*, 312 N.W.2d 875, 880 (Wis. Ct. App. 1981) (plaintiff's failure to recognize difficult and innovative reason why it need not pay taxes was mistake of law). Indeed, courts faced with fact patterns analogous to the instant case have treated the "mistake" as one of fact and declined to apply the voluntary payment rule. See, e.g., *United States v. C.J. Tower & Sons of Buffalo, Inc.*, 499 F.2d 1277, 1282 (C.C.P.A. 1974) (importer of aircraft fuel cells seeking refund of ad valorem tax on ground that he was unaware that fuel cells were considered emergency defense purchases made mistake of fact rather than law and thus had no reason to protest imposition of tax); *San Antonio*

560

*Indep. Sch. Dist. v. National Bank of Commerce*, 626 S.W.2d 794, 797 (Tex. Ct. App. 1981) (voluntary payment rule did not apply where city erred in computing ad valorem tax and plaintiff erred in not recognizing that it was paying taxes on valuation different from figure it had submitted to taxing agency).

The instant case is an equitable action, not an action based on a refund statute. See *American Tierra Corp. v. City of West Jordan*, 840 P.2d 757, 760 (Utah 1992) (action to recover unlawful charges for city services is equitable in nature). Equity affords relief against mutual mistakes as long as the mistake is not *wholly* one of law. See *MacGowan v. Gaines*, 127 Vt. 477, 481, 253 A.2d 121, 124 (1969); *In re Estate of Watkins*, 114 Vt. 109, 137, 41 A.2d 180, 196 (1945). In determining whether a quasi-contract should be implied under an equitable theory of unjust enrichment, the inquiry is whether, in light of the totality of the circumstances, equity and good conscience demand that the defendant return that which the plaintiff seeks to recover. *Legault v. Legault*, 142 Vt. 525, 531, 459 A.2d 980, 984 (1983) (whether there has been unjust enrichment must be realistic determination based on broad view of human setting involved).

Given the undisputed facts and circumstances of this case, equity demands a refund. Cf. *Knutson Hotel Corp. v. City of Moorhead*, 84 N.W.2d 626, 629 (Minn. 1957) (where city charged hotel for disposal of sewage that never entered city system, city was required to make restitution because it took money that it had no right in equity or good conscience to retain). The city manager testified in his deposition that certain departments within the City must have been aware that plaintiff was operating as a granite manufacturing business, but that that information would not necessarily have been passed on to the Water and Sewer Department. Other evidence in the record indicates that even the Water and Sewer Department was aware that plaintiff was a granite manufacturing business. In 1985, the name on the meter cards for the site was changed from L.D. Hutchins Insulation Co. to Brookside Memorials, Inc., and in 1990 the Department changed the name on the sewer bills from Fernand Lajeunesse, whom the director of the Department knew to be operating a granite shed, to Brookside Memorials, Inc. The director testified that he had been aware from the billing records that plaintiff was a granite shed, but stated in an affidavit that some granite sheds use a sandblasting technique in the manufacturing process and thus are not entitled to a flat sewer rate based on number of employees rather than metered water use. These facts hardly demonstrate that the City had less of an opportunity than plaintiff to discover the billing error; to the contrary, they suggest that the City had constructive notice that plaintiff was a granite manufacturing business, and thus was in a better position than plaintiff's owners, who had no reason to suppose that they were entitled to a special sewer rate, to discover and correct the mistake in billing. Further, the record does not support the trial court's conclusion that the bills themselves presented plaintiff with an opportunity to discover through reasonable diligence that the City was applying the wrong rate. The bills merely listed the water and sewer charges without indicating the type of rate applied or the availability of other rates.*

------
*The trial court relied on *Marshall Durbin & Co. v. Jasper Utils. Bd.*, 437 So. 2d 1014 (Ala. 1983), to support its conclusion that plaintiff bore the responsibility for ascertaining whether the sewer rate imposed by the City was consistent with the use of its premises. The court in *Marshall Durbin* opined that "a utility customer should be required to give the

Moreover, the City's own policy regarding refunds appears to recognize that plaintiff is entitled to a refund based on the type of mistake at issue here. At oral argument, the City acknowledged that it offered a one-year refund to plaintiff not as an offer of settlement for a promise not to sue, but rather as an offer under its refund policy limited only by a one-year statute of limitations that the City believes to govern.

According to the City, even if we determine that plaintiff is entitled to a refund, the amount of the refund is limited by 32 V.S.A. § 5292(a):

> A taxpayer shall not contest the validity of any tax assessed against his person, personal property or real estate nor the validity of the action of the listers or selectmen in assessing such tax nor the validity of any grand list unless the taxpayer filed his objections to the validity thereof, in the office of the town clerk wherein the tax is assessed, within a period of two months from November 15 of each year in which the tax is assessed.

The City reasons as follows: Subsections (a) and (b) of 24 V.S.A. § 3612 provide that unpaid sewage disposal charges shall be a lien upon real estate in the same manner as taxes under 32 V.S.A. § 5061, and that the municipality may enforce

---

rate making body notice that the rates are being paid under protest before a refund can be ordered *in an action contesting those rates.*" *Id.* at 1026 (emphasis added). Here, plaintiff is not challenging the City's rate structure. Rather, this case involves a mutual mistake that caused the City to bill plaintiff at an incorrect rate. Plaintiff had no reason to protest because it assumed that the City was applying the correct rate. The *Marshall Durbin* case is not on point.

such a lien in the same manner as in the collection of taxes under subchapter 9 of chapter 133 of Title 32, which includes § 5292(a).

We find no merit to this argument. Subchapter 9 of chapter 133 of Title 32 is entitled "Delinquent Taxes." Article 4 within that subchapter concerns the statutory procedure by which municipalities may collect delinquent taxes. Article 6 of subchapter 9, entitled "Taxpayers' Defenses," includes § 5292(a). The references to Title 32 in 24 V.S.A. § 3612 are intended to create a lien on real estate for delinquent sewer charges and to provide municipalities with a statutory cause of action to enforce such a lien. Here, the City is not seeking to enforce a lien based on unpaid sewer bills. Nor is plaintiff seeking to contest the validity of a tax assessed against its personal property. The limitations period in § 5292(a) does not apply to the instant action.

Finally, the City briefly contends that even if it is liable for plaintiff's overpayments, it is liable only to the extent that it still held the wrongfully collected funds at the time plaintiff initiated the present action. In support of its argument, the City cites two Vermont cases, *Meacham v. Town of Newport,* 70 Vt. 264, 40 A. 729 (1898), and *Champlain Realty Co. v. Town of Brattleboro,* 97 Vt. 28, 121 A. 580 (1923). In *Meacham,* the Court determined that property taxes were illegally assessed and collected against the plaintiff. The plaintiff was awarded a refund for the $117 that had been assessed by the town, but not for the $36 that had been assessed by the town school district because the defendant town had already paid the $36 to the treasurer of the school district and could not compel the district to return the sum. *Meacham,* 70 Vt. at 269, 40 A. at 730. In *Champlain Realty,* the plaintiff was entitled to a refund of taxes paid on pulp wood after the United States Supreme Court ruled that the imposition of such taxes violated the Com-

merce Clause of the United States Constitution. The defendant town argued that its liability did not extend to that portion of the taxes that the town was required to turn over to the state and county. This Court held that the town was liable for the full amount because at the time the plaintiff commenced its suit the town had not yet distributed to the state and county their portion of the taxes. *Champlain Realty*, 97 Vt. at 32, 121 A. at 582.

Assuming that the relevant legal holdings in these two cases are still good law, they do not govern this case. Here, the overpayments for sewage disposal went directly to the City's Water and Sewer Department, and not to any other nonparty governmental entities from which they could not be recovered.

*Reversed; plaintiff's motion for summary judgment is granted, and the case is remanded for computation of damages. Plaintiff's motion to strike is denied as moot.*

Motion for reargument denied July 14, 1997.