Terri **RECTOR, Damian Spencer, Lynn D. Jamison, Shirley Beamer, and Robert Wagner, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,**

v.

**CITY AND COUNTY OF DENVER, a municipal corporation; and ACS State and Local Solutions, Inc., a New York corporation, Defendants–Appellees.**

No. 03CA0857.

Colorado Court of Appeals,
Div. IV.

Jan. 27, 2005.

Certiorari Denied Oct. 24, 2005.

The Carey Law Firm, Leif Garrison, Robert B. Carey, Colorado Springs, Colorado, for Plaintiffs–Appellants.

Cole Finegan, City Attorney, Geoffrey S. Wasson, Assistant City Attorney, Denver, Colorado, for Defendant–Appellee City and County of Denver.

Davis, Graham & Stubbs, LLP, Richard P. Holme, Andrew M. Low, Denver, Colorado, for Defendant–Appellee ACS State and Local Solutions, Inc.

WEBB, J.

In this putative class action concerning fines and late fees assessed for parking violations, plaintiffs, Terri Rector, Damian Spencer, Lynn D. Jamison, Shirley Beamer, and Robert Wagner, appeal the judgment in favor of defendants, City and County of Denver and ACS State and Local Solutions, Inc., dismissing all claims with prejudice, and the award of attorney fees to ACS. We affirm in part, reverse in part, and remand for further proceedings as to declaratory and injunctive relief.

Under a contract with Denver, ACS prepares parking tickets and violation notices, sends these notices to alleged violators, processes parking tickets, and collects fines and late fees. It receives a percentage of the money collected.

Denver's parking citation states, "if payment is not received within 20 calendar days, the fine is increased to ... Fine Amt. is Doubled." The Denver Municipal Revised Code (DMRC) prohibits collection of fees or costs "for violation of a municipal ordinance except those specifically provided for in this Code." DMRC § 14–42. According to plaintiffs, because the parked vehicle violation

ordinance, DMRC § 54–829, does not expressly provide for a late fee in addition to the underlying fine, assessing late fees violates § 14–42.

The Municipal Code further provides that payment of the prescribed fine to the county court clerk represents a complete satisfaction of the violation. DMRC § 54–824. If a violator requests a hearing and is found guilty, the judgment entered is the applicable fine plus court and certain other costs. DMRC § 54–825. According to plaintiffs, the parking citation misrepresents that a late fee will be imposed if the alleged violator pays the fine to the court clerk after twenty days or requests a hearing.

Plaintiffs further assert that Denver improperly delegates its authority to ACS and that Denver pays ACS an unlawful commission.

Plaintiffs seek return of late fees from both defendants based on claims of unjust enrichment and money had and received. They also seek a declaratory judgment concerning the parties' rights and obligations under the DMRC and injunctive relief against both defendants to protect future violators of Denver's parking ordinances from actions allegedly contrary to the DMRC.

Plaintiffs further allege that ACS violated the Federal and Colorado Fair Debt Collection Practices Acts, 15 U.S.C. § 1692, et seq. (FDCPA), and § 12–14–101, et seq., C.R.S. 2004 (CFDCPA); violated the Colorado Consumer Protection Act, § 6–1–101, et seq., C.R.S.2004 (CCPA); and engaged in a civil conspiracy with Denver "to commit a tortious act" by using "false and deceptive language." However, because plaintiffs argue that the trial court erred in dismissing their civil conspiracy claim for the first time in their reply brief, we do not address this argument. *See Rocky Mountain Animal Def. v. Colo. Div. of Wildlife*, 100 P.3d 508 (Colo.App.2004).

Defendants jointly moved to dismiss under C.R.C.P. 12(b)(5). Denver filed a separate motion to dismiss under C.R.C.P. 12(b)(1), asserting that plaintiffs' unjust enrichment and money had and received claims sounded in tort and that immunity was not waived by the Colorado Governmental Immunity Act, § 24–10–101, et seq., C.R.S.2004 (CGIA).

The trial court found that plaintiffs' voluntary payment of fines and late fees constituted final judgments that precluded recovery under *Prilliman v. City of Canon City*, 146 Colo. 159, 360 P.2d 812 (1961). The court also dismissed the FDCPA, the CFDCPA, and the CCPA claims, concluding that the parking ordinances did not give rise to a commercial transaction.

The court awarded ACS attorney fees under § 13–17–201, C.R.S.2004, on the basis that all claims asserted by plaintiffs were tort claims.

## I. Scope of Review

A motion to dismiss for failure to state a claim under C.R.C.P. 12(b)(5) is disfavored and should be granted only when it appears beyond doubt that the plaintiff cannot obtain relief under any reasonable interpretation of the pleaded facts. *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095 (Colo.1995). Such a motion must be decided solely on the complaint allegations, with all factual allegations being accepted as true and the court drawing all reasonable inferences therefrom in favor of the plaintiff. *Medina v. State*, 35 P.3d 443 (Colo.2001); *Kratzer v. Colo. Intergovernmental Risk Share Agency*, 18 P.3d 766 (Colo.App.2000).

Immunity under the CGIA is an issue of subject matter jurisdiction to be resolved by the trial court under C.R.C.P. 12(b)(1). *Fogg v. Macaluso*, 892 P.2d 271 (Colo.1995). The plaintiff has the burden of proving jurisdiction, and the trial court's findings of fact will not be reversed unless clearly erroneous. *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993). However, if the court accepts all the plaintiff's factual assertions as true, immunity becomes an issue of law subject to de novo appellate review. *Tidwell v. City & County of Denver*, 83 P.3d 75 (Colo.2003).

When a trial court does not engage in the proper C.R.C.P. 12(b) analysis, a reviewing court need not remand if it can resolve the issue as a matter of law. *W.O. Brisben Cos. v. Krystkowiak*, 66 P.3d 133 (Colo.App.

2002), *aff'd,* 90 P.3d 859 (Colo.2004); *cf. Norsby v. Jensen,* 916 P.2d 555 (Colo.App. 1995) (reviewing court applied C.R.C.P. 12(b)(1) without remand when trial court improperly treated motion to dismiss as a C.R.C.P. 12(b)(5) motion).

## II. Voluntary Payment Rule

■ Plaintiffs first contend the trial court erred in precluding recovery of late fees under the voluntary payment rule. We disagree.

Initially, we note that while the trial court made findings concerning the voluntary payment rule under C.R.C.P. 12(b)(1) and the CGIA, this rule does not implicate a public entity's waiver of its statutory immunity as to "claims for injury which lie in tort or could lie in tort." *See* § 24–10–106(1), C.R.S.2004. Hence, we review application of the voluntary payment rule de novo, based on the factual allegations of the amended complaint, under C.R.C.P. 12(b)(5).

In *Prilliman,* a motorist pleaded guilty to an ordinance violation and paid a fine. Shortly thereafter, the supreme court declared the ordinance void. *City of Canon City v. Merris,* 137 Colo. 169, 323 P.2d 614 (1958), *overruled in part by Vela v. People,* 174 Colo. 465, 484 P.2d 1204 (1971). Prilliman then sued to recover the fine.

The supreme court held Prilliman had paid the fine under a mistake of law and upheld dismissal of his claim based on the general rule set forth in 70 C.J.S. *Payment* § 156(c), "[m]oney paid under an unconstitutional or invalid statute or ordinance, without any circumstances of compulsion is paid under a mistake of law, and so cannot be recovered." *Prilliman, supra,* 146 Colo. at 160, 360 P.2d at 812.

Here, plaintiffs characterize their payment of late fees as a mistake of fact. In *Prilliman,* the supreme court determined that in as much as the motorist believed "lawful steps could be taken to collect the fine assessed against him," his mistake was one of law. 146 Colo. at 160, 360 P.2d at 812. We discern no meaningful distinction between a mistaken belief that a void ordinance is valid, as in *Prilliman,* and plaintiffs' mistaken be-

lief here that Denver acted with the authority created by a valid ordinance in assessing late fees.

Moreover, both in *Prilliman* and here, the claimants had at least constructive knowledge of the ordinances, *see Francis v. City & County of Denver,* 160 Colo. 440, 418 P.2d 45 (1966), and actual knowledge of the facts purportedly constituting violations. *See Black's Law Dictionary,* 1017 (8th ed.2004) ("mistake of law" is "A mistake about the legal effect of a known fact or situation."); *see also Brookside Mem'ls, Inc. v. Barre City,* 167 Vt. 558, 702 A.2d 47, 50 (1997) (in voluntary payment cases, the typical mistake of law involves "a failure to appreciate the effect or consequences of a recognized law").

And we note that a misrepresentation as to a legal obligation will not support an action for damages. *Chacon v. Scavo,* 145 Colo. 222, 358 P.2d 614 (1960); *Two, Inc. v. Gilmore,* 679 P.2d 116 (Colo.App.1984).

Recently, strict application of the mistake of fact-mistake of law distinction under the voluntary payment rule has been questioned. *See Time Warner Entm't Co. v. Whiteman,* 802 N.E.2d 886 (Ind.2004). However, even the *Whiteman* court recognized that the weight of authority still applies the rule to mistakes of law. It cited with approval *City of Evansville v. Walker,* 162 Ind.App. 121, 318 N.E.2d 388 (1974), which rejected a claim to recover parking fines imposed without legal authority because the plaintiffs voluntarily paid the fines rather than contesting them.

Hence, we conclude that plaintiffs made mistakes of law, and we discern no basis to treat mistakes of law differently here than in *Prilliman.*

Nevertheless, plaintiffs argue that even if they made mistakes of law, misrepresentations by Denver and ACS preclude application of the voluntary payment rule. In this regard, plaintiffs' reliance on *United Bank v. Meaux,* 761 P.2d 253 (Colo.App.1988), and *Norton v. City of Chicago,* 293 Ill.App.3d 620, 228 Ill.Dec. 810, 690 N.E.2d 119 (1997), is misplaced.

In *United Bank,* the bank officer misrepresented the fact that the bank's file included a guarantee agreement obligating Meaux,

when no such agreement existed. Here, unlike in *United Bank,* the alleged misrepresentations by Denver and ACS involve, according to the amended complaint, "falsely representing that the violator must pay the fine within twenty days or a *lawful* late fee will be imposed, falsely representing that the late fee is mandatory, [and] thereby falsely representing the character, amount and *legal status* of the amount owed" (emphasis added).

In *Norton,* parking surcharges were falsely labeled as "court costs" and "statutory mailing fees." *Norton v. City of Chicago, supra,* 228 Ill.Dec. 810, 690 N.E.2d at 126. Here, plaintiffs argue that the parking citation falsely labels the late fee a fine, because it states that, if the fine is not paid within twenty days, "Fine Amt. is Doubled." Whether the amount is described as a fine plus a late fee or a doubled fine, the description informs the violator that a penalty is being assessed. Unlike in *Norton,* here the penalty is not falsely labeled as a transactional cost.

Thus, plaintiffs have not pleaded a misrepresentation that would relieve them from the voluntary payment rule.

We also reject plaintiffs' argument that threats of a late fee, "seizure of your vehicle (booting)," and "additional impoundment, towing, storage fees" exempt them from the voluntary payment rule because their payments were coerced.

The parties cite no Colorado authority, and we have found none, addressing voluntariness of payments in this or a similar context. Cases in other jurisdictions treat payments made by choice or by the free exercise of will as voluntary. *See, e.g., Worth v. City of Rogers,* 341 Ark. 12, 14 S.W.3d 471 (2000) (payment is voluntary unless made to release a person or property from seizure or detention); *Greene v. Alachua Gen. Hosp., Inc.,* 705 So.2d 953 (Fla.Dist.Ct.App.1998) (patient's payment of hospital bills was voluntary despite pressure of medical provider to pay).

Other cases focus on the absence of an opportunity to contest the potentially disputed payment as determinative of involuntari-ness. *See Dreyfus v. Ameritech Mobile Communications, Inc.,* 298 Ill.App.3d 933, 233 Ill.Dec. 61, 700 N.E.2d 162 (1998); *cf. McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990).

■ We adopt the view that, where the payor has an opportunity to dispute the payment, "the voluntariness in the doctrine goes to the willingness of a person to pay a bill without protest as to its correctness or legality." *Putnam v. Time Warner Cable, Ltd. P'ship,* 255 Wis.2d 447, 649 N.W.2d 626, 633 (2002) (holding that payee should be entitled to rely on using its collected revenues where payor does not pay under protest).

Here, despite the opportunity to contest their violations, plaintiffs either paid the parking fines assessed or negotiated reduced fines, and two paid late fees, all without protest. Thus, because plaintiffs do not allege any circumstances sufficient to overcome the free will of an ordinary person, they cannot avoid the voluntary payment rule based on coercion.

Finally, we note that many courts in similar cases have held the voluntary payment rule bars recovery of fines. *See, e.g., Callahan v. Sanders,* 339 F.Supp. 814 (M.D.Ala. 1971), *aff'd in part and rev'd in part,* 466 F.2d 59 (5th Cir.1972); *Brown v. State,* 565 So.2d 585 (Ala.1990); *City of Miami v. Keton,* 115 So.2d 547 (Fla.1959); *Berg v. City of Chicago,* 97 Ill.App.2d 410, 240 N.E.2d 344 (1968); *City of Evansville v. Walker, supra; Ferguson v. Butler County,* 297 Mo. 20, 247 S.W. 795 (1923).

Accordingly, we conclude as a matter of law the voluntary payment rule bars plaintiffs' claims for recovery of late fees based on unjust enrichment and money had and received.

### III. Federal and Colorado Fair Debt Collection Practices Acts

Plaintiffs next contend the trial court erred in dismissing their FDCPA and CFDCPA claims against ACS. We disagree.

■ The purpose of the FDCPA is to "eliminate abusive debt collection practices

by debt collectors." 15 U.S.C. § 1692(e). The FDCPA defines debt as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5).

When an obligation arises outside the scope of a consumer transaction, the obligation is not a "debt" under the FDCPA. *See Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86 (4th Cir.1994)(child support obligation is not "debt"); *Cook v. Hamrick*, 278 F.Supp.2d 1202 (D.Colo.2003)(attorney fees claim based on unlawful detainer is not "debt"); *Riebe v. Juergensmeyer & Assocs.*, 979 F.Supp. 1218 (N.D.Ill.1997)(overdue library book fines are not "debt"); *see also* Statements of General Policy or Interpretation, Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50,097, 50,102 (Dec. 13, 1988)(Federal Trade Commission interpretation excluding fines).

Similarly, the CFDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction, whether or not such obligation has been reduced to judgment." Section 12–14–103(6)(a), C.R.S.2004. No reported Colorado appellate case has interpreted this definition.

While plaintiffs seemingly concede that other parking violations involve Denver's police power, they argue that late fees assessed for parking meter violations arise out of a consumer obligation, thereby exposing ACS to claims under the FDCPA and the CFDCPA. The only facts pleaded in the amended complaint supporting this argument are: "a motor vehicle operator enters into a contract with the City in which the motor vehicle operator pays a certain amount of money and the City, in exchange, allows that person to use the parking space for a certain amount of time."

Plaintiffs' legal conclusion that they entered into a contract is not binding under C.R.C.P. 12(b)(5). *See* 6 C. Wright & A. Miller, *Federal Practice and Procedure 3d* § 1357 n. 16 (2004). Plaintiffs have cited no cases, and we have found none, in which either the FDCPA or the CFDCPA has been applied to fines for parking violations or any other type of fines imposed by a governmental entity.

At oral argument, both sides agreed that we could take judicial notice of DMRC provisions beyond those set forth in the record.

Under § 54–510, the city traffic engineer determines, "as the public convenience and safety require, how parking meters shall be placed." Under § 54–511, the manager of public works determines the time limit to be set on parking meters, "as the public convenience and safety require." And § 54–514 identifies as a parking meter violation using a metered parking space in excess of the time limit by inserting additional coins into the meter.

Based on these DMRC provisions, we conclude that regulating metered parking represents an exercise of Denver's police power, to further public safety and convenience, not rendition of a service to consumers by leasing parts of public streets for short-term private occupancy. *Cf. Staub v. Harris*, 626 F.2d 275, 278 (3d Cir.1980)("at a minimum, the [FDCPA] contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value").

Accordingly, we conclude the trial court did not err in dismissing plaintiffs' FDCPA and CFDCPA claims against ACS.

## IV. Colorado Consumer Protection Act

Plaintiffs next contend the trial court erred in dismissing their CCPA claim against ACS. Again, we disagree.

To prove a CCPA claim, a plaintiff must show: (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) the public is significantly impacted as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally

protected interest; and (5) the challenged practice caused the plaintiff's injury. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142 (Colo.2003).

Here, plaintiffs again rely on their allegation of parking in a metered space as a consumer transaction. However, we have rejected this argument. Further, the CCPA does not apply to "[c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local government agency." Section 6–1–106(1)(a), C.R.S.2004.

Moreover, ACS only provided services to Denver, not to plaintiffs. *See Hall v. Walter*, 969 P.2d 224, 235 (Colo.1998)(identifying as elements of a CCPA claim that the challenged practice "significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property"). And we discern nothing in ACS's alleged misconduct that would "have the capacity or tendency to attract consumers." *See Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc., supra,* 62 P.3d at 147.

Accordingly, we conclude the trial court properly dismissed plaintiffs' CCPA claim against ACS.

### V. Declaratory and Injunctive Relief

■ Plaintiffs next contend the trial court erred in dismissing their declaratory and injunctive relief claim against both defendants. We agree.

■ Under the Uniform Declaratory Judgments Law, as adopted in Colorado, an interested person may have determined any question of construction or validity arising under a municipal ordinance and obtain a declaration if the person's rights, status, or other legal relations are affected by the ordinance. Section 13–51–106, C.R.S.2004. This statute affords parties judicial relief from uncertainty and insecurity in legal relations, and it is to be liberally construed. *Mt. Emmons Mining Co. v. Town of Crested Butte*, 690 P.2d 231 (Colo.1984).

■ A declaratory judgment proceeding must be based on an actual controversy. *Community Tele–Communications, Inc. v. Heather Corp.*, 677 P.2d 330 (Colo.1984). An analysis of a plaintiff's standing considers whether the plaintiff has alleged an injury in fact and, if so, whether the injury is to a legally protected or cognizable interest. *Wimberly v. Ettenberg*, 194 Colo. 163, 570 P.2d 535 (1977). Thus, the plaintiff must show that the challenged ordinance will cause tangible detriment to its activities. *Mt. Emmons Mining Co., supra.*

■ However, to seek declaratory relief concerning a regulatory scheme, the standing requirement does not force a plaintiff to violate the regulation and become subject to punishment. *Community Tele–Communications, Inc. v. Heather Corp., supra; see also Colo. State Bd. of Optometric Exam'rs v. Dixon*, 165 Colo. 488, 440 P.2d 287 (1968). Rather, the injury-in-fact element of standing is established if the regulatory scheme "threatens to cause injury to the plaintiff's present *or imminent* activities." *Bd. of County Comm'rs v. Bowen/Edwards Assocs., Inc.*, 830 P.2d 1045, 1053 (Colo.1992)(emphasis added); *see also City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427 (Colo.2000).

Here, plaintiffs seek a declaratory judgment concerning ongoing practices that they allege are unlawful or constitute improper delegation under the DMRC, and they request injunctive relief to prevent injury to future violators if defendants were to continue these practices. Although Denver asserts that plaintiffs failed to raise the improper delegation argument below, the amended complaint includes multiple allegations of improper delegation, including a question common to the putative class.

In its order dismissing the amended complaint, the trial court did not expressly address the declaratory and injunctive relief claim. To the extent that the trial court presumably found this claim dismissible under the voluntary payment rule, we disagree. Because the requested declaratory and injunctive relief would address prospective conduct, we conclude this rule does not bar this claim.

■ The trial court also did not make any findings concerning plaintiffs' standing

or the existence of an actual controversy. Nevertheless, defendants assert that plaintiffs lack standing to seek declaratory relief. We are not persuaded.

Plaintiffs' allegations that they and similarly situated putative class members own vehicles and park within Denver are sufficient to make them "interested persons" who may request a declaratory judgment under § 13–51–106 concerning late fees assessed for parking violations. To require a motorist to commit a parking violation and then delay paying the fine until Denver assesses a late fee, before being allowed to challenge the late fee, would be contrary to Colorado law. *See Bd. of County Comm'rs v. Bowen/Edwards Assocs., Inc., supra; Community Tele–Communications, Inc. v. Heather Corp., supra.*

Moreover, the amended complaint alleges that ACS has collected millions of dollars in late fees based upon hundreds of thousands of parking violations. It further alleges that the practice of threatening to impose late fees as to all parking violations and the relationship between Denver and ACS are ongoing. Thus, despite the absence of any allegations concerning unresolved parking violations, we are presented with more than the mere possibility of a future legal dispute. *See Bd. of County Comm'rs v. Bowen/Edwards Assocs., Inc., supra.*

Defendants cite *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), in which inmates who did not pay contempt fines sought release from prison. However, *Juidice* is inapposite because the portion of the case or controversy analysis on which defendants rely dealt with persons who had already been released from prison by paying the contempt fine, not the likelihood of reincarceration.

Defendants also assert that we must assume plaintiffs will obey the law, citing *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (Court assumed parties will not be prosecuted and convicted of criminal laws). However, a parked vehicle violation in Denver is not a crime. DMRC § 54–829 (consequence of nonpayment is immobilization of vehicle).

Defendant's reliance on other federal standing cases is misplaced because *Wimberly v. Ettenberg, supra,* adapted a less stringent standard. *See Ainscough v. Owens,* 90 P.3d 851, 855 (Colo.2004)("In Colorado, parties to lawsuits benefit from a relatively broad definition of standing.").

Accordingly, we conclude plaintiffs alleged sufficient facts to state a claim for declaratory and injunctive relief.

## VI. Attorney Fees

Finally, plaintiffs contend the trial court erred in awarding ACS attorney fees under § 13–17–201. We agree.

Section 13–17–201 mandates an award of reasonable attorney fees "[i]n all actions brought as a result of a death or injury to person or property occasioned by the tort of any other person, where *any such action* is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure" (emphasis added).

This statute requires courts to award a defendant reasonable attorney fees whenever an entire tort action, but not merely one or more tort claims, is dismissed under C.R.C.P. 12(b). *State v. Golden's Concrete Co.,* 962 P.2d 919 (Colo.1998); *Berg v. Shapiro,* 36 P.3d 109 (Colo.App.2001); *First Interstate Bank v. Berenbaum,* 872 P.2d 1297 (Colo. App.1993).

Here, because of our conclusion that the declaratory and injunctive relief claim was wrongly dismissed, defendants cannot recover their attorney fees under § 13–17–201. *See Sundheim v. Bd. of County Comm'rs,* 904 P.2d 1337 (Colo.App.1995)(§ 13–17–201 inapplicable because one of the claims had been restored in part), *aff'd,* 926 P.2d 545 (Colo.1996).

The judgment entered against plaintiffs is reversed as to dismissal of the declaratory and injunctive relief claim and the attorney fees awarded to ACS; the judgment is affirmed in all other regards; and the case is

remanded for further proceedings consistent with this opinion.

Judge ROY and Judge GRAHAM concur.