# In re Estate of Eugenie P. Elliott (David and Marlene DeFreest, Appellants)

[542 A.2d 282]

No. 86-147

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed January 22, 1988

*King & King*, Waitsfield, for Appellants.

*Valsangiacomo, Detora, McQuesten, Rose & Grearson*, Barre, for Appellee.

**Gibson, J.** David and Marlene DeFreest appeal from a judgment of the Washington Superior Court disallowing their claim against the estate of Eugenie Elliott for debts incurred by her husband, George Elliott. We affirm.

## I.

George Elliott and Eugenie Elliott were husband and wife at all times material herein. As a result of Alzheimer's disease, Mrs. Elliott became incompetent in 1974, and in September of 1978, the Washington Probate Court appointed George Elliott her guardian. He continued in this capacity until his death in August of 1983. Eugenie Elliott died in October of 1983.

During the summer of 1978, George Elliott entered into an oral agreement with David DeFreest whereby DeFreest would bale Mr. Elliott's hay in return for a share of the hay. Later that same year, Mr. Elliott agreed to buy back a portion of DeFreest's share of the hay. In 1979, Mr. Elliott, having not paid his previous hay bill, agreed to pay interest on the bill. Also in 1979, the two men agreed that DeFreest would bale Mr. Elliott's hay under an agreement similar to the 1978 agreement, including the buy-back provision. Despite Mr. Elliott's failure to pay for any of the hay, DeFreest continued to hay for Mr. Elliott during the summers of 1980, 1981 and 1982 under the terms of the 1979 haying arrangement. Mr. Elliott used the hay he received from these arrangements to feed his herd of cattle, which were kept on the Elliott farm.

After the deaths of both Mr. and Mrs. Elliott, the DeFreests submitted a claim to Mrs. Elliott's estate for the cost of the hay furnished to Mr. Elliott. In filing their claim, the DeFreests relied on 15 V.S.A. § 67 to attribute Mr. Elliott's debt to his wife's estate, since Mr. Elliott's only property was the real estate he had held by the entirety with his wife. The probate court denied the claim on the ground that the court lacked subject matter jurisdiction to interpret and apply 15 V.S.A. § 67. On appeal, the Washington Superior Court disallowed the claim.

In their appeal to this Court, the DeFreests raise the following issues: (1) whether Mrs. Elliott's estate may be held liable for the DeFreest's claims against her husband; (2) whether the trial court erred in concluding that the DeFreests failed to prove their claim; (3) whether the trial court erred in its application of the Dead

Man's Statute, 12 V.S.A. §§ 1602-1603, and thereby failed to consider competent testimony conditionally admitted by the court; and (4) whether the DeFreests are entitled to recover under a theory of restitution or quantum meruit.

In considering this appeal, " 'we will not interfere if a reasonable evidentiary basis supports the court's findings and the findings are sufficient to support the conclusions of law . . . .' " *Bartley-Cruz* v. *McLeod*, 144 Vt. 263, 264, 476 A.2d 534, 535 (1984) (quoting *Emmons* v. *Emmons*, 141 Vt. 508, 511, 450 A.2d 1113, 1115 (1982)). We also bear in mind that the "evidence must be examined in the light most favorable to the prevailing party . . . ." *Id.*

## II.

The DeFreests' reliance on 15 V.S.A. § 67 to establish their claim against Mrs. Elliott's estate is misplaced. 15 V.S.A. § 67 states:

> Real estate and tangible personal property and the products thereof, held and owned by husband and wife by the entirety, are made chargeable during the lifetime of the husband for the debts contracted by him for the necessary upkeep of such property, in the same manner and to the same extent as if owned and held by him in his sole name.

In asserting their claim, the DeFreests would have this Court interpret the current statute consistently with the 1927 version of the statute.[1] The 1927 version, which included the additional phrase "for the necessary support of his family," permitted the debts incurred by the husband in the support of the family to be charged to property held by the couple by the entirety. The DeFreests maintain that the Legislature's omission of this phrase during a general statutory revision was inadvertent and that this Court should now read the phrase back into the statute.

---

[1] In 1927, 15 V.S.A. § 67 read:

> Real estate and tangible personal property and the products thereof held and owned by husband and wife by the entirety are hereby made chargeable, during the lifetime of the husband, for the debts contracted by him for the necessary support of his family and for the necessary upkeep of such property, in the same manner and to the same extent as if owned and held by him in his sole name.

■ This Court must give effect to the language of the statute as it existed at all times material herein, not as the statute previously existed at some point in the distant past. This Court will not look beyond the statute itself in an effort to determine whether contrary legislative intent exists when the statutory language itself is clear and unambiguous. *Cavanaugh* v. *Abbott Laboratories*, 145 Vt. 516, 530, 496 A.2d 154, 163 (1985). Consequently, only those debts incurred by Mr. Elliott in the "necessary upkeep" of the property he held by the entirety with Mrs. Elliott, or debts incurred for the benefit of Mrs. Elliott's property, may be charged by the DeFreests.

■ The superior court did not err in refusing to allow the DeFreests to hold Mrs. Elliott's estate liable for Mr. Elliott's debts. The DeFreests failed to establish that Mr. Elliott incurred the debts for the necessary upkeep of any property held by the entirety by Mr. and Mrs. Elliott, or any property held solely by Mrs. Elliott. Although the hay was used to feed the herd of cattle, none of the evidence established that the herd was held by Mr. and Mrs. Elliott as tenants by the entirety rather than by Mr. Elliott alone. Nor was there any evidence submitted that the haying served to benefit the real estate jointly held by the Elliotts. In fact, the evidence offered by the DeFreests focused on Mr. Elliott's use of the hay to benefit the herd and on the value of the hay itself rather than its value as a benefit to the farm. Thus, because the proffered evidence failed to establish that Mr. Elliott incurred the debt for the hay in the necessary upkeep of the personal property or real estate held by Mr. and Mrs. Elliott by the entirety, the superior court properly concluded that the DeFreests could not rely on 15 V.S.A. § 67 to establish their claim against Mrs. Elliott's estate.

### III.

■ The superior court found that the DeFreests produced no evidence that Mr. DeFreest ever contracted with Mrs. Elliott, either directly or indirectly, despite the court's decision to permit the DeFreests to introduce all of their evidence and then decide whether it was admissible under the Dead Man's Statute, 12 V.S.A. §§ 1602-1603. Unless Mrs. Elliott was a party to the contract between her husband and Mr. DeFreest, she cannot be held liable under the contract. See *R. & E. Builders, Inc.* v. *Chandler*,

144 Vt. 302, 304-05, 476 A.2d 540, 542 (1984) (a wife cannot be held liable on a contract between her husband and a third party on the sole basis of the husband-wife relationship). The DeFreests assert that Mrs. Elliott was a party to the contract because the acts of Mr. Elliott were in effect those of Mrs. Elliott. The DeFreests established only, however, that they were aware of Mrs. Elliott's incompetency, not that they believed Mr. Elliott intended to bind Mrs. Elliott by his contracts. Further, it is fundamental that an incompetent person has no capacity to contract. See generally Restatement (Second) of Contracts § 12(2)(c) (1981) (a mentally ill person does not have capacity to enter into a legally enforceable contract). In the absence of evidence to the contrary, the superior court's conclusion that no explicit or implied-in-fact contract existed between Mr. DeFreest and Mrs. Elliott will not be overturned by this Court. We, therefore, do not reach the issue of the application of the Dead Man's Statute in the instant case.

The DeFreests also argue that they were entitled to rely on Mr. Elliott's status as Mrs. Elliott's guardian so that his acts were binding upon her property. Although Mr. Elliott, as Mrs. Elliott's guardian, did have the power to deal with her property, he could only do so for the benefit of Mrs. Elliott. *Richardson* v. *Passumpsic Savings Bank*, 111 Vt. 181, 183, 13 A.2d 184, 185 (1940). As discussed above, the DeFreests did not establish that the debt Mr. Elliott incurred benefited Mrs. Elliott in any way.

### IV.

■ The DeFreests also failed to establish that they were entitled to recover from Mrs. Elliott's estate under a quasi-contract theory of unjust enrichment or restitution. Under a quasi-contract theory, "[t]he law implies a promise to pay when a party receives a benefit and the retention of the benefit would be inequitable." *Cedric Electric, Inc.* v. *Shea*, 144 Vt. 85, 86, 472 A.2d 757, 757 (1984) (citation omitted). As discussed above, the DeFreests introduced no evidence to establish that Mrs. Elliott received any benefit from Mr. DeFreest's haying services or the hay purchased from him. Absent a benefit to Mrs. Elliott, there can be no recovery for unjust enrichment or restitution. See *Batchelder* v. *Mantak*, 136 Vt. 456, 465, 392 A.2d 945, 950 (1978) (where the wife had no ownership in the property which was ben-

efited, did not participate in the negotiations for the services, or request the services, she could not be held liable to the plaintiff on the basis of either contract or quasi-contract).

■ Finally, the DeFreests may not recover under the theory of quantum meruit.[2] Under quantum meruit, one should receive the reasonable value of his services where he justifiably relied on the defendant's request for those services regardless of whether the defendant received a benefit. *Earhart* v. *William Low Co.*, 25 Cal. 3d 503, 513-16, 600 P.2d 1344, 1350-52, 158 Cal. Rptr. 887, 893-95 (1979). The DeFreests focused on the value of the services in relation to their benefit to the cow herd and introduced no evidence to establish the value of the services in relation to the upkeep of the property. Nor was there any evidence that Mrs. Elliott requested Mr. DeFreest's services or that Mr. Elliott requested them on her behalf. Therefore, quantum meruit cannot serve as a basis for recovery.

*Affirmed.*

---

[2] There has existed much confusion over the proper uses and definitions of the terms "restitution," "unjust enrichment" and "quantum meruit." While it is beyond the more limited, practical scope of rendering a decision in the instant case to clearly define and differentiate among these terms, we provide herein an extremely brief discussion of them.

Traditionally, "unjust enrichment" has been one of the elements of the theory of restitution. See Restatement of Restitution § 1 (1937). More recently, the doctrine of restitution, including "unjust enrichment," has been partially incorporated into the law of contracts. See Restatement (Second) of Contracts § 344 comment d (1981). The doctrine of "quantum meruit," however, arose separately from either the theory of restitution or contract law, and owes its existence to certain historical peculiarities of the common law practice of count pleading. See *Slade's Case*, 4 Coke Rep. 92 (1602). The distinction between unjust enrichment and quantum meruit lies in the focus for measuring damages. Unjust enrichment focuses on the value of the benefit actually conferred upon the defendant. Quantum meruit, on the other hand, is determined by the reasonable value of plaintiff's services regardless of their value to defendant. See generally Childres & Garamella, *The Law of Restitution and the Reliance Interest in Contract*, 64 Nw. U.L. Rev. 433, 434-36 (1969).