# DJ Painting, Inc. v. Baraw Enterprises, Inc. and E.F. Wall and Associates, Inc.

[776 A.2d 413]

No. 99-401

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed May 11, 2001

*William L. Durrell* of *Barr & Associates*, Stowe, for Plaintiff-Appellant.

*J. Scott Cameron* of *Zalinger Cameron & Lambek, P.C.*, Montpelier, for Defendants-Appellees.

**Johnson, J.** Plaintiff DJ Painting, Inc. appeals three orders of the superior court in favor of defendants Baraw Enterprises, Inc. (Baraw) and E.F. Wall and Associates, Inc. (Wall). On appeal, plaintiff argues that the trial court erred in (1) dismissing plaintiff's motion for a writ of attachment to perfect a mechanic's lien; (2) granting defendants'

motion for summary judgment on plaintiff's contract claims; and (3) awarding attorneys' fees to defendants. We affirm the dismissal of plaintiff's motion for a writ of attachment, the granting of defendants' motion for summary judgment and the award of attorneys' fees to defendant Wall. We reverse the award of attorneys' fees to defendant Baraw because the court erred in awarding fees based on plaintiff's bad faith.

In September 1997, defendant Wall entered into a contract to serve as a general contractor for improvements to defendant Baraw's property, the Stoweflake Resort, in Stowe, Vermont. The total value of the contract was approximately $3.2 million. Wall then engaged plaintiff DJ Painting in a standard subcontract agreement to provide taping, painting and vinyl wall covering services for the project. At the time it was executed, the subcontract anticipated paying plaintiff approximately $110,500 for plaintiff's materials, labor and equipment. All of plaintiff's work was subject to the approval of the project architect. Plaintiff did not enter into any contract with Baraw.

Relevant clauses from the standard subcontract are as follows. First, the subcontractor agrees that all work is "subject to the final approval of the Architect/Engineer or other specified representative of the Owner." If the subcontractor fails to perform the specified work, then with notice and opportunity to cure, the general contractor may "terminate the Subcontractor's employment." All claims "arising out of, or relating to, this Subcontract or the breach thereof shall be decided by Arbitration."

As the project progressed, Wall notified plaintiff that its work did not meet the standards set forth in the subcontract. For instance, a letter dated May 7, 1998, from Joseph Bordas, president of Wall, to plaintiff states "the workmanship fails to meet the specified standards." The record contains evidence that plaintiff was notified several more times of this problem and given an opportunity to cure. In June 1998, Wall terminated plaintiff and directed plaintiff to "remove your tools, equipment and personnel from the Stoweflake site." Although plaintiff submitted requisitions totaling $112,925, Wall paid plaintiff $72,925 for the work performed that was approved by the project architect. Subsequently, Wall credited Baraw $40,000 towards the total contract price owed by Baraw to Wall.

Plaintiff filed a lien against Baraw's property in October 1998 pursuant to 9 V.S.A. § 1921, and simultaneously filed suit against both defendants in superior court. In its five count complaint, plaintiff sought (1) to perfect the lien by attaching Baraw's property pursuant

to 9 V.S.A. § 1924; (2) to recover for unjust enrichment against Baraw; (3) to recover in quantum meruit against Baraw; (4) to recover for breach of contract against Wall; and (5) to recover for wrongful termination against Wall. In response, Wall posted a bond of $40,000, which was later increased to $50,000 at the court's suggestion to cover any interest or costs should full damages be awarded to plaintiff. In December 1998, because of the bond posted by Wall, the court dismissed plaintiff's motion for a writ of attachment against Baraw's property. Wall also filed a counterclaim against plaintiff alleging breach of contract.

In a subsequent order, the court granted defendants summary judgment on plaintiff's remaining claims. As to the two claims against Wall, the court ruled that the subcontract specifically provides that all claims arising out of the agreement shall be submitted to binding arbitration. As to the two claims against Baraw, the court ruled that it is not equitable for plaintiff to assert these claims against Baraw when plaintiff had a contractually agreed upon recourse against Wall. Two weeks later, upon defendants' petition, the court awarded attorneys' fees to defendants pursuant to V.R.C.P. 54.

Following the trial court's disposition, plaintiff filed an arbitration claim against Wall for the remaining $40,000 on the contract price. After a one day hearing, the arbitrator awarded plaintiff $14,700, plus $2,500 interest on its claim. Neither party appealed the arbitration decision, and Wall paid plaintiff the full amount of the award. That finalized plaintiff's actions against Wall.

Plaintiff appeals the court's decision regarding the writ of attachment, the claims against Baraw, and the award of attorneys' fees. Plaintiff raises three issue on appeal. First, plaintiff argues that Wall's bond does not adequately substitute for a writ of attachment to perfect the lien.[1] Second, plaintiff contends that summary judgment was inappropriate on its quantum meruit and unjust enrichment claims. According to plaintiff, whether or not plaintiff performed its

---

[1] Plaintiff, in its brief, argued that posting of the $50,000 bond by defendants does not substitute for plaintiff's right to attach the property. It contends that nowhere in the statutory scheme outlining the lien procedure is there a mention of bond substitution. At oral argument, however, plaintiff conceded that the attachment issue is moot because, in effect, the posted bond protects plaintiff's potential recovery. Thus, we need not reach the merits of this issue. Cf. *Newport Sand & Gravel Co. v. Miller Concrete Constr., Inc.*, 159 Vt. 66, 68, 614 A.2d 395, 396 (1992) (noting in dicta that bond posted by general contractor obviated the need for a writ of attachment to enforce lien filed under 9 V.S.A. § 1921).

work adequately is an issue of fact that should have survived summary judgment. Otherwise, Baraw received a benefit — the painting — for which it paid no compensation. Furthermore, plaintiff argues, it ought to be able to recover for the fair value of the services rendered, regardless of the benefit conferred on Baraw. Because this value was not determined, plaintiff contends summary judgment was error. Finally, plaintiff claims that the court improperly awarded attorneys' fees to defendants by relying on a bad faith standard.

## I. Contract Claims

Plaintiff acknowledges that it has no written contract with Baraw. Therefore, plaintiff relies on the equitable doctrines of unjust enrichment and quantum meruit for recovery. Because plaintiff disputes that its work was substandard, it claims that Baraw received the benefit of $40,000 worth of services for which it did not have to pay. At the very least, plaintiff contends that it expended money on labor and equipment on the job and it should be compensated. Under either of these theories, plaintiff seeks to impose a quasi-contract obligation on Baraw to make plaintiff whole.[2]

◼ Claims for quasi-contract are based on an implied promise to pay when a party receives a benefit and the retention of the benefit would be inequitable. *In re Estate of Elliott*, 149 Vt. 248, 252, 542 A.2d 282, 285 (1988). The questions before the Court are whether plaintiff has alleged sufficient facts to prove that a benefit was conferred upon defendant Baraw, whether Baraw accepted the benefit, and whether it would be inequitable for Baraw not to compensate plaintiff for its value. *Center v. Mad River Corp.*, 151 Vt. 408, 412, 561 A.2d 90, 93 (1989). The parties dispute the degree to which plaintiff's work met the architect's standards, and actually conferred a benefit on Baraw. For the purpose of our discussion, however, we assume that plaintiff did confer a benefit on Baraw through the taping and painting services,

---

[2] Plaintiff argues that its claims for unjust enrichment and quantum meruit are distinct causes of action. In fact, the distinction between the two lies not in the alleged wrong committed by the defendant but rather in the measure of recovery for that wrong. "Unjust enrichment focuses on the value of the benefit actually conferred upon the defendant. Quantum meruit, on the other hand, is determined by the reasonable value of plaintiff's services regardless of their value to defendant." *In re Estate of Elliott*, 149 Vt. 248, 253 n.2, 542 A.2d 282, 285-86 n.2 (1988). Although we need not decide the issue because of our disposition of this case, it would appear that plaintiff cannot recover on both equitable claims. To do so would allow plaintiff recovery twice for the same harm, just applying a different measure of damages.

and that Baraw did accept this benefit. See *Rubin v. Town of Poultney*, 168 Vt. 624, 625, 721 A.2d 504, 506 (1998) (mem.) (on summary judgment we take all allegations made by the nonmoving party as true). Even assuming that plaintiff's work was at least partially acceptable, to survive summary judgment, plaintiff, as the nonmoving party, must still demonstrate sufficient evidence to support the equity prong of the prima facie case. *Id.*

In analogous cases, we have established that "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust." *Ray Reilly's Tire Mart, Inc. v. F. P. Elnicki, Inc.*, 149 Vt. 37, 40, 537 A.2d 994, 995 (1987). See also *Center*, 151 Vt. at 413, 561 A.2d at 94 (where there is no evidence of inequity there can be no damages on quasi-contract theory); *Harman v. Rogers*, 147 Vt. 11, 18, 510 A.2d 161, 165 (1986) (implied contract claim fails where plaintiff failed to sustain burden of showing mutual expectation of payment). The proper inquiry is "whether, in light of the totality of circumstances, it is against equity and good conscience to allow defendant to retain what is sought to be recovered." *Legault v. Legault*, 142 Vt. 525, 531, 459 A.2d 980, 984 (1983). Therefore, plaintiff must demonstrate that it would be unfair for Baraw not to pay plaintiff additional money above and beyond what plaintiff received from the contract with Wall and the arbitration award against Wall.

When we look at the "totality of circumstances," we find that this is not the ordinary quasi-contract case in which one party has performed work for another party without the formality of a contract, that the party benefitted has accepted the services, and therefore ought to be required to pay for them. Cf. *Hedges v. Schinazi*, 144 Vt. 605, 481 A.2d 1046 (1984). The specific work for which payment is requested here was covered by a contract with a third party, the general contractor, Wall, which in turn contracted with defendant. Although the existence of the contract with Wall does not necessarily preclude a remedy against defendant, the terms of the contract and the remedies exercised under it become highly relevant in determining whether denying further payment to plaintiff is unjust, such that we should imply a contract where there is none.

Under the terms of the contract with Wall, plaintiff agreed that its work would be subject to the approval of the architect. The architect did not fully approve, and payment was withheld. Eventually, as outlined above, plaintiff submitted under the contractual terms to arbitration, where the quality of plaintiff's work was at issue. The dispute was resolved in arbitration, and an additional $17,200 was paid

to plaintiff over and above the initial payments made, under the contract, of approximately two-thirds of the contract price. The arbitration award was not appealed. Baraw, through its general contract with Wall, paid plaintiff for the full benefit of plaintiff's work as determined by the arbitrator, performed on Baraw's property.

Plaintiff brought forward no other facts in response to summary judgment that would suggest that plaintiff's fully utilized contractual remedies with Wall unfairly resulted in an unjust enrichment of Baraw. Plaintiff did not rely to its detriment on a promise to pay by Baraw, nor did plaintiff rely on Baraw's ability to pay when it contracted with Wall. See *Frank W. Whitcomb Constr. Corp. v. Cedar Constr. Co.*, 142 Vt. 541, 546, 459 A.2d 985, 988-89 (1983). Plaintiff has not identified any reason why it would be just for plaintiff to receive additional compensation, such as collusion between the architect and Wall, or Wall and Baraw. Plaintiff's claim is simply an avoidance of the contract with Wall. In reality, plaintiff is seeking in quasi-contract the remainder of the *contract* price with Wall, or as plaintiff states in its brief, "[i]f the work met the standards required by the contract, then equity and good conscience demand that the Plaintiff be compensated for its work. If the work was deficient, the Plaintiff is entitled to something less and possibly nothing at all." In other words, plaintiff is attempting to relitigate its claim against Wall by pursuing Baraw. At this point, to require Baraw to pay plaintiff above the amount it paid Wall would force Baraw to pay twice for the same service. *Morrisville Lumber Co. v. Okcuoglu*, 148 Vt. 180, 184, 531 A.2d 887, 889 (1987) ("The retention of a benefit is not unjust where defendants have paid for it. . . . To allow plaintiff to recover in these circumstances would be to require defendants to pay twice.").

In *Morrisville*, the plaintiff subcontractor supplied lumber to a general contractor who was building a vacation home for the defendant owner. After the owner terminated the general because of a contract dispute, the plaintiff sued the general to recover for the materials and supplies it had provided before the general was terminated, and the plaintiff won a judgment by default. When plaintiff's judgment against the general was not satisfied, the plaintiff looked to the owner for recovery. *Id.* at 182, 531 A.2d at 888. The relationship between the parties in that case and the present litigants are nearly identical. The Court in *Morrisville* denied the plaintiff's unjust enrichment claim because, like the case at bar, the defendant owner had already fully paid the general contractor for all the benefits the owner had received. *Id.* at 184, 531 A.2d at 889. Where an owner has fulfilled its financial

obligation to a general contractor, a subcontractor cannot rely on the owner to satisfy the relationship between the subcontractor and the general. See *DCB Constr. Co. v. Central City Dev. Co.*, 940 P.2d 958, 963 (Colo. Ct. App. 1996) (absent special circumstances, benefit conferred upon owner by performance of contract with a third party cannot form the basis of claim of unjust enrichment); *Henning v. Security Bank*, 564 N.W.2d 398, 403 (Iowa 1997) (absent contractual privity with a homeowner, a subcontractor has no valid quasi-contract claim against the homeowner); *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 390 (Fla. Dist. Ct. App. 1997) (where owner has given consideration for subcontractor's work by paying general the contract price, subcontract cannot claim unjust enrichment against the owner); *Kujawa v. Billboard Cafe at Lucas Plaza, Inc.*, 10 S.W.3d 584, 589 (Mo. Ct. App. 2000) (ordinarily, landlord not liable on quantum meruit theory for value of services provided at request of tenant); *Peace River Elec. Coop. v. Ward Transformer Co.*, 449 S.E.2d 202, 213-14 (N.C. Ct. App. 1994) (owner not unjustly enriched by subcontractor's performance when general was fully paid by owner, despite ongoing dispute over payment between general and subcontractor).

As we stated in *Morrisville*, "[t]he success of a claim for unjust enrichment depends on the particular facts and circumstances of each case." 148 Vt. at 184, 531 A.2d at 889. We find no inequity here because plaintiff has alleged none. Failure to receive the contract price under the circumstances of this case is not enough to prove that Baraw has been unjustly enriched. Moreover, it can hardly be equitable to impose a contract on the parties that completely undermines the contractual relationships that the parties themselves have created. The point of hiring a general contractor for a construction job is for the general to manage the job and hire the subcontractors. The owner does not deal directly with the subcontractors, and often is unaware of the identity of the subcontractors. See *id.* at 183-84, 531 A.2d at 889; *Whitcomb*, 142 Vt. at 542, 459 A.2d at 986. The owner pays the general contractor, but if the general does not pay the subcontractors, the subcontractors have the statutory lien mechanism to attach money as yet unpaid to the general contractor. 9 V.S.A. § 1921. That was not the case here, as the general's failure to pay the subcontractor arose out of a dispute over the work, which was fully resolved under the contract between general and subcontractor. The contract between the general, Wall, and the subcontractor, plaintiff, sufficiently protected the rights of the parties.

No equitable relief is warranted and summary judgment was appropriate on this issue.

## II. Attorneys' Fees

The trial court awarded defendants attorneys' fees on the basis of two theories. The first is bad faith. The court held that plaintiff acted in bad faith when it filed suit against Baraw and Wall despite the arbitration clause in the subcontract agreement. By suing both Wall and Baraw without first seeking arbitration, plaintiff disregarded contract obligations and imposed litigation costs on defendants. The second theory under which the court imposed attorneys' fees is statutory. The court used 9 V.S.A. § 4007(c), which states "the substantially prevailing party in any proceeding to recover any payment within the scope of this chapter shall be awarded reasonable attorneys' fees," as additional support for the award to Wall only. The court found that Wall was a substantially prevailing party because it won summary judgment on plaintiff's claims.

The court erred in awarding attorneys' fees based on plaintiff's bad faith. We apply the "American Rule" with regard to attorneys' fees, which means that parties must bear their own attorneys' fees absent a statutory or contractual exception. *Myers v. Ambassador Ins. Co.*, 146 Vt. 552, 558, 508 A.2d 689, 692 (1986). This Court has, however, recognized the ability of courts to use their equity power to award fees "as the needs of justice dictate." *In re Gadhue*, 149 Vt. 322, 327, 544 A.2d 1151, 1154 (1987). This power may be invoked "only in exceptional cases and for dominating reasons of justice." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 167 (1939). In *Gadhue*, we quoted the New Hampshire Supreme Court in explaining the type of conduct that would justify an award of attorneys' fees.

> "Bad faith conduct held to justify the award of counsel fees has been found where one party has acted in 'bad faith, vexatiously, wantonly, or for oppressive reasons' where the litigant's conduct can be characterized as unreasonably obdurate or obstinate, and where it should have been unnecessary for the successful party to have brought the action."

*Gadhue*, 149 Vt. at 329, 544 A.2d at 1155 (quoting *Harkeem v. Adams*, 377 A.2d 617, 619 (N.H. 1977)). Applying this standard, in both *Gadue* and *Harkeem* attorneys' fees were awarded when a litigant was

compelled to appear more than once in the state supreme court before obtaining relief.

■ Plaintiff's conduct is not so outrageous as to warrant an award of attorneys' fees on this ground. Defendants have won on the merits at the trial court and before this Court. Multiple trips through the state court system were not required. Nor is there any indication that plaintiff acted obdurately or obstinately in conducting the litigation. The trial court correctly points out that a reasonable reading of the subcontract agreement might foreclose the action prosecuted by the plaintiff here. We cannot find, however, that plaintiff's conduct is such that "dominating reasons of justice" require an award of attorneys' fees. Thus, we reverse the award of fees for defendant Baraw.

■ As for defendant Wall, however, we agree with the trial court that under 9 V.S.A. § 4007(c) attorneys' fees are appropriate. Our paramount goal in statutory construction is to give effect to the Legislature's intent, *Burlington Elec. Dep't v. Vermont Dep't of Taxes*, 154 Vt. 332, 335, 576 A.2d 450, 452 (1990), and thus we apply the plain meaning of a statute where the language is clear and unambiguous. *Reed v. Glynn*, 168 Vt. 504, 506, 724 A.2d 464, 465 (1998). Section 4007 is part of chapter 102 of Title 9, which explicitly governs construction contracts. It is clear that Wall is the "substantially prevailing party" in a "proceeding to recover any payment" due under a construction contract. Plaintiff's arguments to the contrary are without merit. Defendant Wall was sued for breach of contract and wrongful termination. Because there was an arbitration clause in the contract between Wall and plaintiff, plaintiff's claims were dismissed on summary judgment. The counterclaims brought by Wall were raised simply to preserve its rights, should Wall not succeed to dismiss the case against it. The dismissal of those counterclaims on summary judgment can hardly be seen as a victory for plaintiff.

*Affirmed in part, reversed in part.*