NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 59

No. 2018-236

| | |
|---|---|
| Soon K. Kwon | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Eric Edson and Dina Well | January Term, 2019 |

Robert A. Mello, J.

Herbert J. Downing of Kolvoord, Overton & Wilson, P.C., Essex Junction, for Plaintiff-
  Appellant.

Samantha V. Lednicky of Murdoch Hughes Twarog Tarnelli Attorneys at Law, P.C., Burlington,
  for Defendants-Appellees/Cross-Appellants.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **CARROLL, J.** In this landlord-tenant dispute, following a bench trial, the court found that the parties had an oral rental agreement and awarded plaintiff landlord back rent and reimbursement for electric bills.[1] The court granted tenant Edson damages to compensate him for work he performed on landlord's properties and tenant Well compensatory and punitive damages for breach of the implied warranty of habitability and illegal eviction. Landlord appeals, arguing

---

[1] When landlord filed the action, he named defendants Eric Edison and Andria Well and this is how their names were entered on the superior court docket. At the final hearing, defendants testified that their names are Eric Edson and Dina Well. Consequently, those are the names used in this opinion.

that the court erred in (1) finding that there was an oral rental agreement between the parties and that defendants were tenants; (2) awarding rent for only a portion of the period tenants occupied the property; (3) awarding tenant Edson damages because the claim was not properly pled; and (4) awarding tenant Well punitive damages. Tenants cross appeal, arguing that the court abused its discretion in finding there was an agreement to pay rent once the building was compliant with the housing code and erred in awarding landlord back rent based on a theory of unjust enrichment. We affirm in part and reverse and remand in part.

¶ 2.     In sum, we conclude that the evidence supports the court's finding that the parties entered an oral agreement allowing tenants to stay in landlord's apartment rent-free for some portion of time. The record does not support the court's findings as to the terms of that agreement: that tenants agreed to pay rent after the building became compliant with the housing code and that the building did not become code-compliant until the third week of November 2016. Consequently, we strike the award of back rent and reimbursement for electrical costs to landlord and remand for the court to make new findings regarding the nature of the parties' agreement and to enter any revised judgment if supported by the facts. We affirm the court's award of damages to tenant Edson for the work he performed for landlord, concluding that the issue was tried by implied consent. Finally, we conclude that an award of punitive damages was allowable as damages for breach of the warranty of habitability and affirm the award of punitive damages to tenant Well.

## I.  Facts

¶ 3.     Following a bench trial, the court found the following. Landlord and his wife own an apartment building on South Union Street in Burlington. In June 2016, the building required indoor and outdoor painting to be brought into compliance with the city's lead-paint requirements. Landlord contacted a painting company, but he was unable to reach an agreement. Tenant Edson,

2

who was employed by the painting company, offered to do the painting during his nonwork hours. Edson provided an initial estimate of $30,000 but landlord was not willing to spend that much money. Instead, the parties reached an agreement under which Edson would work on the building in his free time and landlord would pay for the materials and compensate Edson $35 an hour for his labor. Landlord gave Edson an initial check for $500 and the code to access the building in July 2016.

¶ 4.     By early August 2016, Edson had finished the first phase of the work and requested payment of $3000 for his labor. Landlord was satisfied with the quality of the work but gave Edson only an additional $500. Edson told landlord that he would discontinue working unless he received the balance of $2500. Landlord offered that if Edson continued to paint, he would pay Edson in full for all his work and agreed that Edson and his girlfriend, tenant Well, could reside in apartment 2 of the building rent-free until the building was fully brought up to code. At that time, tenants would pay landlord $1650 in monthly rent. Edson accepted the offer and resumed painting.[2]

¶ 5.     Edson continued painting the building through the summer and fall of 2016. He did other work on the property, including replacing locks and fire alarms, removing satellite dishes,

---

[2] At trial, the parties had different accounts. Landlord testified that there was no agreement for tenants to live in the apartment. He also claimed that he had told them the rent was $1650 for the apartment and he was entitled to back rent for that amount. Landlord stated that he would not have agreed to barter for tenants' services in exchange for a place to stay. Tenant Edson testified that landlord allowed tenants to stay in the apartment rent-free until a different apartment in the building was renovated, at which time, tenants would move and begin paying rent. Although he negotiated this agreement with landlord, he testified that landlord agreed to allow tenant Well to stay as well. Tenant Well testified that landlord agreed to allow her to stay rent-free in exchange for cleaning services.

Based on all this testimony, the court found that landlord allowed the parties to stay in the apartment rent-free until the building was brought up to code. The court explained that this agreement benefitted both sides. Landlord needed to bring the building up to code to charge rent and tenants needed a place to stay but could not afford the rent. As explained in more detail below, all parties contend that this finding is not supported by the evidence.

replacing a toilet, and painting indoor hand railings, doors, and windows. Edson and Well also did cleaning and trash removal. The building became compliant with the city's lead-paint requirements. Landlord was satisfied with the quality of Edson's work and sent him checks totaling $1400, which was far less than what Edson was owed. The court found that landlord owed Edson $12,400 for the painting and other work.

¶ 6.     Throughout the summer and fall of 2016, tenants resided in apartment 2. They did not have a written lease and did not pay rent. Landlord knew that tenants were residing in the apartment without a lease or security deposit and without paying rent. Landlord paid the electrical bill for that apartment. Landlord did not attempt to evict tenants.

¶ 7.     In November 2016, the building was up to code except that landlord needed to pay the city a reinspection fee before he could receive a certificate of occupancy.

¶ 8.     Also, in November 2016, the Department of Corrections revoked Edson's furlough status and he was incarcerated. He has not resided in the apartment since that time. Well continued to reside in the apartment without paying rent. She did not have an agreement to perform services for landlord in lieu of rent.

¶ 9.     In March 2017, landlord sent tenants a letter requesting that they move out by the end of April 2017 and indicating that landlord needed to prepare the apartment for new tenants. He stated that he would disconnect the utilities since tenants had not taken over the utilities. Well did not vacate the apartment, but she did contact the electric department and transferred the electric bill to her name. In May 2017, landlord sent tenants a notice entitled "Termination of Your Tenancy for Non-Payment of Rent." The notice stated that the tenancy was terminated as of May 31, 2017 due to nonpayment of rent and that there was ten months of back rent due totaling $16,500. This was the first time that landlord alleged tenants owed back rent. Tenant Well responded by removing her name from the electric account.

4

¶ 10.    Landlord initiated this eviction action in June 2017.  In his complaint, landlord alleged that tenants agreed to rent from him on a month-to-month basis and agreed to pay him $1650 in monthly rent plus electricity.  He stated that tenants moved in around August 1, 2016 and had paid no rent.  Tenants counterclaimed, pleading breach of the implied warranty of habitability and illegal eviction and seeking compensatory damages, punitive damages, and attorney's fees.  While the case was pending, tenant Well remained in the apartment.

¶ 11.    Landlord asked for a rent escrow order.  The court denied the request in December 2017.

¶ 12.    In August 2017, landlord had Well's car towed from the property on two occasions.  She incurred a fee to retrieve the car from the towing company.  She then began storing her car off-site at a cost of $100 a month.

¶ 13.    On December 29, 2017, Well contacted city code enforcement because her heat was not working properly.  The code-enforcement officer determined that the thermostat was defective and that the temperature was below the city's minimum requirement of 65 degrees.  The officer tried to reach landlord without success.  The temperature in the apartment dropped to 44 degrees and the officer posted it as "unfit" for habitation.  This problem continued until January 5, 2018.  In addition, the pipes froze, and Well was without hot or cold water.  She could not shower, use the sink, wash her hands, flush the toilet, or brush her teeth for eight days.  Both Well and code enforcement promptly informed landlord, but the problem was not fixed until January 11, 2018.  Landlord paid for Well to stay in a hotel for one night after code-enforcement officials communicated that it was required.  When an enforcement officer visited the apartment on January 11, 2018, he found propane heaters running in the basement of the building, which posed a serious fire hazard and put inhabitants of the building at risk of carbon monoxide poisoning.  The officer cited landlord for violations of the city's housing code.  The court found that landlord did not fix

the heat and water issues within an amount of time that would have been reasonable to address those issues.

¶ 14. In 2017 and 2018, landlord told city authorities that apartment 2 was unoccupied when he knew that tenant Well was residing there so that he would not have to provide Well with certain notices regarding lead paint.

¶ 15. Based on these findings, the court determined that Edson was a tenant and made the following awards. The court concluded that there was an oral contract between landlord and Edson in which landlord agreed to pay Edson $35 an hour to do painting and other work on the building. Edson satisfactorily completed the work, but landlord did not provide full payment for the work. Therefore, the court concluded that landlord owed Edson $12,400.

¶ 16. Because Edson was no longer residing in the apartment and there was no reasonable probability that he would return, the court concluded that Edson had abandoned the property and landlord was entitled to a writ of possession as to Edson. See 9 V.S.A. § 4462(a). The court also concluded that tenant Edson was entitled to judgment on landlord's claims for unpaid rent and electric bills because he moved out in November 2016, before the time when the court found that rent was due from tenants.

¶ 17. The court concluded that Well was a tenant because in August 2016 landlord entered an oral agreement allowing both Edson and Well to reside in apartment 2 rent-free until the building was brought up to code after which they were responsible for paying $1650 in monthly rent. See 9 V.S.A. § 4451(8), (10) (defining rental agreement and tenant). By the third week of November 2016, the building was brought up to code and therefore tenant Well was not liable for rent before that date. Landlord sent a notice on May 8, 2017, which stated that ten months of back rent was due. The court concluded that to be effective the termination notice had to state accurately the amount of rent past due because tenant had a right to cure by paying the overdue rent. See 9

6

V.S.A. § 4467(a) (stating that tenant can cure by paying back rent owed). Because the May 2017 notice did not accurately state the amount of back rent owed, it was ineffective to terminate the tenancy. Therefore, the court concluded that landlord was not entitled to a writ of possession as to Well.[3]

¶ 18. Nonetheless, the court awarded landlord $1060 in electrical bills and $31,350 in unpaid rent under an unjust-enrichment theory. The court explained that although Edson and landlord had an agreement, Well benefitted from it and was required to compensate landlord. The court awarded tenant Well compensatory damages, punitive damages, and attorney's fees for illegal eviction and breach of the warranty of habitability.

¶ 19. Tenants moved to reconsider, arguing that the evidence did not support the court's findings that they agreed to pay rent after the building was up to code or that the building became code-compliant in November. The court denied the motion, concluding that although the witnesses did not testify that the parties agreed tenants could live on the premises rent-free until the building was brought up to code, this was a fair inference from the testimony and surrounding circumstances.

¶ 20. Landlord appealed the court's order and tenants cross appealed.

## II. Contract Between Parties

¶ 21. The main disagreement between the parties was the existence and terms of a rental agreement. Landlord asserted that no rental agreement existed but that tenants were liable for paying past-due rent. Tenants claimed that landlord gave them permission to occupy apartment 2 until apartment 1 was fully renovated and they could move into it. The trial court found that the parties entered an oral agreement by which tenants could occupy apartment 2 for no rent until the

---

[3] On appeal, landlord asserts that he is entitled to a writ of possession as to tenant Well; however, he makes no argument to support that assertion. Therefore, we do not address whether the court properly denied a writ of possession as to Well.

building was brought up to code after which they were responsible for paying $1650 in monthly rent. The court further found that the building was code-compliant in November and therefore that tenants were responsible for paying rent after that date.

¶ 22. Landlord argues that the evidence does not support the court's finding that there was an oral rental agreement to stay rent-free until the building was code compliant. Landlord asserts that the court inferred this from several findings that were not supported by the evidence, including that: it was in landlord's interest to allow tenants to stay in apartment 2 rent-free because he could not legally rent the apartment; landlord needed the building brought up to code to charge rent; the building was not up to code in August 2016; and the building was brought up to code by the third week of November. Tenants also assert that the court's finding regarding the parties' agreement was unsupported by the evidence. Tenants claim that there was no evidence to support the court's finding that they agreed to pay rent after the building was brought up to code.

¶ 23. Our standard of review of a trial court's findings made following a bench trial is limited. "Factual findings are viewed in the light most favorable to the prevailing party, disregarding modifying evidence." Rubin v. Sterling Enters., Inc., 164 Vt. 582, 588, 674 A.2d 782, 786 (1996); see V.R.C.P. 52(a)(2) (explaining that court as factfinder judges credibility of witnesses and weight of evidence and "[f]indings of fact shall not be set aside unless clearly erroneous"). Findings, even those "contradicted by substantial evidence," will be affirmed "unless there is no credible evidence to support the finding." Rubin, 164 Vt. at 588, 674 A.2d at 786.

¶ 24. Here, tenants' testimony was sufficient to support a finding that there was an agreement between the parties to allow tenants to stay in the apartment rent-free, but the evidence does not support the court's findings that tenants agreed to pay rent after the building was brought up to code and that the building was brought up to code in late November 2016. Landlord testified at trial that the parties did not have an agreement. Tenant Edson testified that landlord agreed to

8

let tenants stay in apartment 1 because it could not be rented due to lead paint issues, and tenants would begin to pay rent once apartment 2 was renovated. Although landlord testified that there was no agreement, it was within the court's discretion to credit tenant Edson's testimony that landlord orally agreed to let tenants occupy the apartment without paying rent.[4]

¶ 25. The terms of this agreement as found by the court are not, however, supported by the evidence. There is no support for the finding that the building came into compliance with the code requirements in the third week of November. The city building inspector provided testimony about the building's compliance with the city housing code. He testified that as of March 2016, the only deficiency was that the apartment was not lead-paint compliant. There was peeling paint that needed to be corrected. Landlord asked for additional time to comply and the issue was remedied as of August 31, 2016. No certificate of compliance was issued at that time, however, because the reinspection fee needed to be paid. The building inspector testified that the apartment could be rented without the certificate of compliance. No other testimony contradicted the building inspector's statement that, except for paying the reinspection fee, the property was up to code at the end of August. Therefore, the finding that the building became compliant in November is not supported.

¶ 26. In addition, neither landlord nor tenants testified that tenants agreed to pay rent once the building was code compliant. The court, in its denial of tenants' motion to reconsider, acknowledged that there was no direct testimony on this point, but concluded that this was a fair inference from the testimony and surrounding circumstances. The court in a bench trial can draw

---

[4] In a related argument, landlord contends that defendants were not tenants and had no legal right to occupy apartment 2. Having concluded that there was support in the record for the court's finding that the parties orally agreed that tenants could live in the apartment rent-free, we conclude that defendants were indeed tenants. They had an agreement "to occupy a residential dwelling unit to the exclusion of others" and therefore met the definition of "tenant" in 9 V.S.A. § 4451(10).

inferences from the facts but "those inferences must add up to more than mere suspicion, and the [court] cannot bridge evidentiary gaps with speculation." Comm'r of Labor v. Eustis Cable Enters., LTD, 2019 VT 2, ¶ 10, __ Vt. __, 206 A.3d 1260 (quotation omitted). Here, the court's finding went beyond a rational inference and into speculation. The evidence did not support a finding that the agreement was contingent on the building being up to code. There was no direct evidence to support this and the circumstantial evidence also did not indicate that bringing the building into compliance with the housing code was a trigger for tenants to pay rent. Landlord's demands for rent did not coincide with the timing of when the building was brought to code or mention that arrangement. As explained above, contrary to the court's finding, the undisputed evidence was that the building was up to code by the end of August 2016, soon after the parties entered into their agreement, and landlord did not demand rent until March 2017. Landlord also continued to pay the electrical bill for the apartment. Further, tenants' actions did not demonstrate that this was the agreement. Tenant Edson continued to work on landlord's properties as he had been doing and both tenants continued to stay in the apartment without paying rent. Given the lack of evidence, direct or circumstantial, the court's finding was speculation rather than a rational inference and is not supported.

¶ 27. Based on the court's unsupported findings that tenants agreed to pay rent after the building was compliant with the code and the building became compliant in November, the trial court entered judgment under a theory of unjust enrichment for landlord against tenant Well for $31,350 representing unpaid rent for December through June and $1060.85 for unpaid electricity from December through April. Tenants assert that the trial court erred in awarding landlord damages for rent and electricity pursuant to a theory of unjust enrichment, asserting that unjust enrichment can be advanced only in the absence of a contractual agreement. Unjust enrichment is "based on an implied promise to pay when a party receives a benefit and the retention of the benefit

10

would be inequitable." DJ Painting, Inc. v. Baraw Enters., Inc., 172 Vt. 239, 242, 776 A.2d 413, 417 (2001). Recovery under this theory depends on "whether, in light of the totality of circumstances, it is against equity and good conscience to allow defendant to retain what is sought to be recovered." Id. at 243, 776 A.2d at 417 (quotation omitted). The existence of a contract does not preclude recovery pursuant to an unjust-enrichment claim, but the existence of a contract and the terms of that contract are "highly relevant in determining whether denying further payment . . . is unjust." Id. Because the court's findings as to the terms of the contract are not supported by the evidence, we cannot determine if a remedy for unjust enrichment would be appropriate in this case. Therefore, the award of back rent and electricity to landlord is reversed and the matter is remanded for the court to make new findings based on the evidence presented at trial as to the terms of the parties' agreement. Based on these findings, the court can determine if damages are appropriate either pursuant to an oral contract or as an equitable remedy for unjust enrichment.

### III. Contract Damages for Tenant Edson

¶ 28. Landlord next argues that the court erred in awarding tenant Edson $12,400 on his breach-of-contract claim because it was not properly pled or proven at trial. Landlord asserts that tenant Edson did not assert a counterclaim for breach of contract in his pleadings and therefore cannot recover under that theory.

¶ 29. A pleading must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." V.R.C.P. 8(a). The purpose of this statement is to provide "fair notice of the claim and the grounds upon which it rests" to the other side. Molleur v. Leriche, 142 Vt. 620, 622, 458 A.2d 1139, 1140 (1983) (quotation omitted). It is not "absolutely necessary for the pleadings to raise an issue before that issue may be submitted" to the trier of fact. Id. If an issue, not presented in the pleadings, is tried " 'by express or implied consent of the parties' " it is treated

as if it had been raised in the pleadings. Id. (quoting V.R.C.P. 15(b)); see In re Waitsfield-Fayston Tel. Co., Inc., 2007 VT 55, ¶ 13, 182 Vt. 79, 928 A.2d 1219 (allowing claim that was not pled to proceed because it was either tried by implied consent or over objection but without prejudice); Brassard Bros. v. Barre Town Zoning Bd. of Adjustment, 128 Vt. 416, 420, 264 A.2d 814, 816 (1970) ("The general rule that cases are to be tried according to the issues made by the pleadings may be limited or enlarged by the conduct or agreement of counsel. When the trial takes such a course, an issue may be introduced in the case which was not properly pleaded.").

¶ 30.    We conclude that in this case, landlord had fair notice of tenant Edson's breach-of-contract claim and the evidence supporting it and therefore it was tried by implied consent. Although tenants' answer and counterclaim complaint did not include a separate count for breach of contract, the issue of payment to tenant Edson for his work was litigated by both sides. Landlord testified that he had an arrangement with Edson whereby Edson performed work for him, and he paid him as the work progressed. Landlord stated that he did not offer to barter Edson's work in exchange for free rent. He stated that he made several payments to Edson and admitted that he still owed Edson "several hundred dollars." Edson testified that his agreement with landlord was that landlord would pay him $35 an hour for his work as it was completed. Edson described the scope of work that he completed on various properties belonging to landlord and the payments he received. He stated that he worked twenty-to-thirty hours a week for landlord during August, September, and October and was not paid for this work. Landlord did not object at trial that the evidence raised an issue not made in the pleadings.

¶ 31.    Furthermore, the claim was referenced in both parties' proposed findings. Tenants' proposed findings recited that landlord owed tenant Edson for unpaid work. The proposal claimed a total of $12,400 owed to tenant: $1600 for work on soffits on the building, $2400 for amounts paid to two workers for work on the building, and $8400 (twenty hours a week for twelve weeks

12

at $35 an hour) for work on several buildings during August, September, and October. Landlord did not object to the inclusion of damages for breach of contract in tenants' proposed findings, and in fact, landlord's proposed findings stated that landlord owed tenant Edson $200 or $300 for his work. Under these circumstances, the breach-of-contract claim was tried by "implied consent of the parties" and therefore should be treated as if it "had been raised in the pleadings." V.R.C.P. 15(b); see Concra Corp. v. Andrus, 141 Vt. 169, 172, 446 A.2d 363, 364 (1982) (concluding that partnership issue, which was not precisely pled, was treated as raised by pleadings where it was referenced in evidence, statements of counsel, and requests to find).

## IV. Punitive Damages

¶ 32. Landlord's final argument is that the court erred in awarding $10,000 in punitive damages to tenant Well. Landlord asserts that in response to Well's statutory claims for breach of habitability and illegal eviction the court was limited to compensatory damages because the statute does not authorize an award of punitive damages. See 9 V.S.A. §§ 4458(a)(1)-(4), 4464(a). We conclude the statute does not preclude an award of punitive damages.

¶ 33. Under the Residential Rental Agreements Act, when a landlord fails to comply with obligations to ensure habitability, fails to make repairs in a reasonable time once notified, and "the noncompliance materially affects health and safety," the tenant can, among other things, "recover damages, costs, and reasonable attorney's fees." 9 V.S.A. § 4458(a), (a)(3). Landlord asserts that the language of the statute precludes recovery for punitive damages. Our goal in construing the statute is to implement the intent of the Legislature, which we do by looking at the "plain, ordinary meaning of the statutory language." Shires Hous., Inc. v. Brown, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215. The interpretation of the statutory language is a question of law that we review de novo. Elkins v. Microsoft Corp., 174 Vt. 328, 330, 817 A.2d 9, 12 (2002).

13

¶ 34. The statute allows recovery of "damages." This is a broad term that includes both compensatory damages and punitive damages. There is nothing in this plain language to indicate that the Legislature intended to preclude an award of punitive damages.

¶ 35. Moreover, under the common law in effect at the time the statute was enacted, punitive damages were available to a tenant for breach of the warranty of habitability and the statute does not manifest an intent to change that principle. Two years before § 4458 was adopted, this Court considered whether punitive damages could be granted to a tenant in response to a claim for violating the implied warranty of habitability. This Court held:

> In addition to general damages, we hold that punitive damages may be available to a tenant in the appropriate case. Although punitive damages are generally not recoverable in actions for breach of contract, there are cases in which the breach is of such a willful and wanton or fraudulent nature as to make appropriate the award of exemplary damages. . . . When a landlord, after receiving notice of a defect, fails to repair the facility that is essential to the health and safety of his or her tenant, an award of punitive damages is proper.

Hilder v. St. Peter, 144 Vt. 150, 163, 478 A.2d 202, 210 (1984). We explained that the purposes of punitive damages are to punish and to deter future conduct. Id. at 164, 478 A.2d at 210; see Glidden v. Skinner, 142 Vt. 644, 647, 458 A.2d 1142, 1144 (1983) (explaining that punitive damages are generally not available for breach of contract except "where the breach has the character of a willful and wanton or fraudulent tort"). Existing common-law rules can be altered by statute, but "[t]he common law is changed by statute only if the statute overturns the common law in clear and unambiguous language, or if the statute is clearly inconsistent with the common law, or the statute attempts to cover the entire subject matter." Langle v. Kurkul, 146 Vt. 513, 516, 510 A.2d 1301, 1303 (1986); see E.B. & A.C. Whiting Co. v. City of Burlington, 106 Vt. 446, 175 A. 35, 44 (1934) (explaining that common-law principles "are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language"). Section 4458 does not contain unambiguous language precluding an award of punitive damages and its language is not

inconsistent with the common law or exclusive as to remedy. Therefore, the common-law principle survives, and in an appropriate case punitive damages can be awarded for breaches of the implied warranty of habitability.

¶ 36. Here, there was sufficient evidence of willful and wanton conduct for the court to make an award of punitive damages. The trial court found that after being notified about habitability issues in the apartment, landlord took far more than a reasonable time to address those issues. See 9 V.S.A. § 4458(a) (allowing tenant to recover damages where landlord fails to make repairs "within a reasonable time"). Landlord took seven days to fix the heat issue when a reasonable amount of time was two days. Landlord took nine days to address the lack of water when a reasonable time was twenty-four hours. Moreover, landlord did not offer to pay for tenant Well to stay in a hotel room while the apartment was not habitable until he was told by code enforcement that he had to do so. Landlord also used propane heaters in the basement of the apartment, which posed a serious fire hazard and a risk of carbon-monoxide poisoning. Landlord fraudulently represented to the city that the apartment was not occupied so he could avoid providing tenant with lead-paint notices. Finally, landlord resorted to self-help by having Well's car towed on two occasions to force her out of the premises without a court eviction order while the eviction proceedings were pending. These facts are sufficient to show willful and wanton conduct and support an award for punitive damages.[5]

Affirmed in part; reversed and remanded in part.

FOR THE COURT:

_____

Associate Justice

---

[5] Landlord does not challenge the amount of the award on appeal.