*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-307

DECEMBER TERM, 2013

| | | |
|---|---|---|
| Kristen A. Chambers (Anton) | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Windsor Unit, |
| v. | } | Family Division |
| | } | |
| | } | |
| George Chambers | } | DOCKET NO. 63-2-04 Wrdm |

Trial Judge: Harold E. Eaton, Jr.

In the above-entitled cause, the Clerk will enter:

Father appeals the court's order denying his request for attorney's fees. We affirm.

The parties were divorced in 2004, and have had several conflicts over parental rights and responsibilities since that time. The instant appeal involves a dispute surrounding the physical rights and responsibility and education of their daughter, who was seventeen at the time of the trial court's decision. The recited facts below are those found by the trial court. Father has not ordered a transcript of the proceedings and has waived any claim of error with respect to the findings.[1] V.R.A.P. 10(b)(1); see In re S.B.L., 150 Vt. 294, 297-98 (1988).

Since 2004, mother has had primary physical rights and responsibilities and father has had consistent parent-child contact. **PC 48.** There has been distrust and acrimony between the parties for some time. They are unable to communicate directly. **PC 49.** The parties attempted to share legal rights, but mother was granted sole authority over medical decisions after father failed to communicate with mother about the children's medical needs. **PC 49.** In March 2013, mother was awarded sole educational decision making for the parties' daughter after a dispute about daughter's attendance at high school. **PC 50.** The events leading up to that decision are relevant to this appeal and recounted below as found by the trial court.

Daughter has a history of self-destructive behavior. **PC 48.** In 2012, daughter decided she wanted more time with father and, with mother's permission, spent most of the summer at his house. In fall 2012, she returned to mother's house and attended school with academic success. She was also improving in her counseling. **PC 50.** In January 2013, daughter announced before going to her father's house for dinner that she was going to stay with her father, and she followed through on her pledge. Daughter continued to attend high school, but a problem arose after school officials learned from daughter that she was now living outside the

---

[1] On appeal, mother has moved to strike portions of father's brief because she asserts that several of the father's facts are allegations not found by the trial court. Because we limit our decision to the facts as found by the trial court, we need not address the motion.

school district. In February 2013, daughter obtained papers to transfer to the high school in father's district. **PC 51.** Mother moved for emergency relief, arguing father had unilaterally removed daughter from school. The court issued an order the same day preventing father from taking unilateral action regarding daughter's schooling. **PC 51.**

In February 2013, daughter obtained a temporary abuse protection order against mother from a court in New Hampshire. The court found that father brought daughter to the courthouse and supported or enabled, or at least failed to discourage her attempt to obtain the order. **PC 52.** At the final hearing on the abuse-protection order, daughter acknowledged that mother had not abused her, but stated she wanted to live with father. Mother was concerned about daughter's mental state following the hearing.

Three days later, following a preliminary hearing in Vermont in connection with the motions raised in response to the above events, the court ordered that daughter continue attending her original school based on the school's representation that daughter could attend regardless of her residence. **PC 52.** Mother was required to bring daughter to school, and father was to transport daughter home. (Daughter continued to stay with father through this period.) Pursuant to this order, mother attempted to transport daughter to school, but daughter would not comply. The parties did not communicate with each other about the matter; instead, when daughter did not want to follow the judge's order and be transported to school by mother, father fashioned a new remedy—driving her himself—rather than forcing daughter to comply or discussing the issue with mother. **PC 53.**

At the next hearing in March, father described daughter as a "basket case." **PC 53.** On March 13, the court issued a temporary order granting mother legal rights for daughter's educational decisions. Between March 13 and March 29, daughter did not attend school, and sent school officials an emailindicating she was dropping out. On March 29, at another hearing, father informed the court that daughter was leaving school. Father made no effort to keep mother informed of daughter's decisions. The court found that "[f]ather essentially abdicated his responsibility as a parent and let [daughter] make whatever decisions she wished, regardless of the consequences, which have been severe." **PC 54.** The court further found that there was no reasonable explanation for father allowing a 17-year-old successful student to quit school without discussing the matter with the other parent. **PC 55.**

Because of father's lack of communication, the court found that mother was "left in the dark" regarding her daughter's condition. **PC 56.** Mother perceived daughter's situation over February and March as steeply declining. Mother contacted an educational consultant, who recommended an outdoor therapeutic wilderness program in another state. Without notifying father, mother arranged for an intervention group to assist in bringing daughter to the program. Mother arrived at father's house at 4 a.m. with a police officer. The court described the ensuing events as follows:

> The intervention smacks of a SWAT team strike, with a police officer banging on the door and mother out in the street yelling and sending a text message to father. This was understandably upsetting to father, his wife, their son and to [daughter]. Father calls the event an abduction. Charitably characterized, it was an extreme measure. **PC 56**

2

Daughter was transported to the program, but mother did not tell father where daughter was being taken.

The court found that mother violated a prior court order by not informing father about daughter's whereabouts. **PC 56.** The court also found that although father disputed that daughter was in crisis warranting such intervention, it was father's lack of communication with mother that triggered mother's actions. Thus, while the court found that the measure was extreme, the court found that mother's actions were based on a reasonable belief that she needed to aid daughter in resolving a crisis. **PC 59.**

These events prompted numerous motions from both parties. Among other things, father moved to modify legal parental rights and responsibilities, and to enforce parent-child contact. Father also made several motions for attorney's fees. One motion included an affidavit by father stating that father was unemployed and had modest income from disability, and averring that mother's income was well above his. **PC 29-30.** Father's motion stated that the attorney's fees were over $50,000 as of May 2013, and requested a hearing to obtain financial records. **PC 41, 42.** The court deferred ruling on the motion. A hearing was held on all of the pending motions over several days in April, May and June 2013.

The court found that father had not met his burden of showing a real, substantial and unanticipated change of circumstances and denied father's motion to modify parental rights and responsibilities. **PC 60.** The court recognized that the parties' were unable to effectively communicate, but found this situation was not a change because it had already existed. Further, the court found that mother's action in removing daughter from father's home and bringing her to the wilderness program disrupted father's parent-child contact, but was not a change of circumstances. The court explained that it did not "endorse the clandestine actions taken by mother," but found those actions were triggered by father's lack of communication. **PC 60.**

The court found, however, that mother's actions of removing daughter from father's home and taking her to an undisclosed location for several weeks violated father's right to parent-child contact. **PC 61.** To remedy the denial of contact, pursuant to 15 V.S.A. § 668a(d), the court granted father $5,000 in monetary sanctions "as a result of the attorney's fees expended to enforce his [parent-child contact] rights." The court recognized that father requested more, but found that $5,000 was a reasonable amount to enforce father's rights and to sanction mother for violating the court's order as to parent-child contact. The court found that the $50,000 in fees claimed by father was not necessary to enforce father's visitation rights. **PC 62.** The court concluded that no further fees were appropriate because a fee award would not further interests of justice and equity. **PC 63.** Father appeals.

On appeal, father argues that the court erred as a matter of law in failing to hold a hearing on his request for attorney's fees to provide evidence about the parties' respective financial circumstances. Father posits that the critical consideration for an award of attorney's fees in a divorce action is the respective financial needs of the parties and, without this information, the court could not decide whether to award fees.

Vermont adheres to the "American Rule," requiring parties to "bear their own attorneys' fees absent a statutory or contractual exception." DJ Painting, Inc. v. Baraw Enters., Inc., 172 Vt. 239, 246 (2001). In a divorce action, attorney's fees are generally recoverable by statute as suit

3

money. Turner v. Turner, 2004 VT 5, ¶ 9, 176 Vt. 588 (mem.) (citing 15 V.S.A. §§ 606, 607). Because divorce "almost always [involves] the financial circumstances and abilities of the parties as matters in controversy," a separate hearing is not required to award fees. See Ely v. Ely, 139 Vt. 238, 242 (1981). "The primary consideration in awarding attorney's fees is the ability of the supporting party to pay and the financial needs of the party receiving the award." Turner, 2004 VT 5, ¶ 9. As in a divorce action in the first instance, a trial court has discretion to award attorney's fees in post-judgment proceedings dealing with motions to modify parental rights and responsibilities. See Mullin v. Phelps, 162 Vt. 250, 268 (1994); Grimes v. Grimes, 159 Vt. 399, 408 (1992) (holding that fees are "a matter of justice and equity within the discretion of the court" and it was reasonable for court to require wife to bear litigation costs associated with father's motion to modify child support). "The power to allocate expenses among the parties mitigates the potentially onerous financial burden that can befall one who seeks to promote a child's best interests. In fashioning an award, the court's primary consideration is the financial resources of the parties." Mullin, 162 Vt. at 268-69 (citing Ely v. Ely, 139 Vt. 238, 241 (1981)).

Father's arguments to reverse the trial court follow two general assertions. First, that mother committed egregious action entitling him to fees. Second, that as a matter of law the court could not deny fees without holding a hearing on the parties' financial circumstances, and if those circumstances are considered, it was an abuse of discretion to deny fees in this case.

Father relies on mother's intervention and removal of daughter to the wilderness program as a basis for attorney's fees. He claims that this was contemptuous action and requires an award of fees. There was no error. In fact, the court concluded that mother's actions violated father's rights and did grant father $5,000 in sanctions in connection with mother's actions. While father claimed he was entitled to far more, the court found that $5,000 was adequate to cover the fees necessary to enforce father's visitation rights and to "punish mother for taking extreme measures." **PC 63.** It is for the family court, not this Court, to assess the credibility of the parties and weigh the evidence. See Kanaan v. Kanaan, 163 Vt. 402, 405 (1995) (noting that trial court's findings entitled to wide deference on review because it is in unique position to assess the credibility of witnesses and weigh the evidence presented). The court censured mother for interfering with father's parent-child contact and awarded sanctions accordingly. There was no abuse of discretion in declining to award father more fees in response to mother's interference with father's contact rights.

Father's claim that the court was required as a matter of law to hold a hearing to assess the parties' financial circumstances prior to denying fees is without merit. While the parties' relative financial situation is relevant to an award of fees, the parties' disparate income alone is not sufficient reason to award fees for a proceeding on a motion to modify. The award of fees in a modification proceeding is a matter of equity arising from the desire to allow a parent with few resources to enforce a court order to protect the child's interest. See Loeb v. Loeb, 120 Vt. 489, 496-97 (1958) (affirming award of attorney's fees incurred in pursuing motion to modify child support and visitation where motion was vital to welfare of child). In addition to considering the parties' financial situations, a court may consider the reasonableness of the fees requested, the strength of the parties' claims, and other equitable considerations.

In this case, the trial court apparently concluded, having considered father's proffered evidence in his motion for fees, that evidence concerning the disparity in the parties' resources would not tip the balance in its analysis of the attorney's fee issue. First, the court pointed to

4

father's own contribution to the escalating conflict that resulted in extensive litigation, arising in large part from father's refusal to communicate with mother. Second, the court concluded that father did not need to file so many motions to resolve the case, that "the sheer magnitude of the motion practice in this case is staggering," and that the parties could have resolved many of the disputes without litigation by speaking with each other. **PC 63.** Third, the court did award sanctions that were sufficient to pay the fees the court deemed reasonable to enforce father's contact rights. For these reasons, the trial court concluded that an award of attorney's fees would not further the interests of justice and equity in this case. The court's thoughtful decision was well within its discretion.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Beth Robinson, Associate Justice


_____
Geoffrey W. Crawford, Associate Justice

5